### In re ''AGENT ORANGE'' PRODUCT LIABILITY LITIGATION.

Nos. 84–6231, 84–6233, 84–6235, 84–6237, 84–6241, 84–6245, 84–6247, 84–6321, 84–6443, 85–6101, 85–6103, 85–6161, 85–6205, 85–6257, 85–6269 and 85–6275.

United States Court of Appeals, Second Circuit.

Argued Jan. 28, 1986.

Decided April 3, 1986.

Opinion Aug. 21, 1986.

Stephen J. Schlegel, Chicago, Ill., for plaintiffs' Management Committee.

Robert A. Taylor, Jr., Washington, D.C. (Wayne M. Mansulla, Ashcraft & Gerel, Washington, D.C., of counsel), for Ashcraft & Gerel.

Benton Musslewhite, Houston, Tex., for Law Offices of Benton Musslewhite, Inc.

Before NEWMAN, KEARSE, and MINER, Circuit Judges.

KEARSE, Circuit Judge:

Stephen J. Schlegel, Esq., a member of the Plaintiffs' Management Committee ("PMC") in the "Agent Orange" product liability litigation, moved in this Court for an order disqualifying the law firm of Ashcraft & Gerel ("Ashcraft") and the Law Offices of Benton Musslewhite ("Musslewhite"), Inc., from representing in the captioned appeals certain class members and other plaintiffs who challenge the settlement of the litigation approved by the district court. Schlegel contends principally that Ashcraft and Musslewhite, as a result of their prior representation of parties supporting the settlement, have conflicts of interest requiring their disqualification as appellate counsel. In an order filed on April 3, 1986, we denied the motion, indicating that this opinion would follow.

## I. BACKGROUND

The Agent Orange lawsuits began in late 1978 and early 1979 when several individual veterans of the Vietnam War and their families brought suit in the Northern District of Illinois and the Southern and Eastern Districts of New York. Named as defendants were several chemical companies that had manufactured Agent Orange and other herbicides for use by the military as defoliants in the Vietnam War. The plaintiffs alleged that they had sustained various physical injuries by reason of the veterans' exposure to Agent Orange. By

order of the Judicial Panel on Multidistrict Litigation, these actions were transferred to the Eastern District of New York for consolidation of pretrial proceedings pursuant to 28 U.S.C. § 1407 (1982). Later-filed actions were also transferred to the Eastern District.

Pursuant to Fed.R.Civ.P. 23(b)(3), the district court certified a plaintiff class consisting of members of the armed forces of United States, New Zealand, and Australia who were injured while in or near Vietnam by exposure to Agent Orange or similar herbicides, and their spouses, parents or children who were directly or derivatively injured as a result of the exposure. Notice of the class certification was given, and potential class members were allowed to opt out. *See In re "Agent Orange" Product Liability Litigation*, 611 F.Supp. 1223, 1229 (E.D.N.Y.1985).

A.  *Representation of Class Plaintiffs*

For purposes of this motion, most of the pertinent facts relating to the representation of individual plaintiffs and the plaintiff class have been stipulated or are not disputed.

Schlegel became counsel to various plaintiffs in the litigation as early as November 1978. He has been designated as one of plaintiffs' counsel of record throughout the Agent Orange litigation. Musslewhite became involved as plaintiffs' counsel in Agent Orange litigation as early as January 1979. He represents some 1,500 Vietnam veterans as individual clients. Ashcraft has represented plaintiffs in Agent Orange litigation on an active basis since early 1980. It represents more than 2,000 plaintiff class members, as well as 386 individuals who originally opted out of the class; 60 of those opt-outs later rejoined the class.

In 1980, after tentatively granting the class certification, the district court appointed Yannacone & Associates ("Yannacone"), a consortium of New York-area lawyers, as lead counsel to the class. Thereafter, Ashcraft acted as class action counsel under an agreement with Yannacone. At the request of or by agreement with Yannacone in early 1983, Schlegel, Musslewhite, and Ashcraft became members of the PMC. All functioned for a time thereafter as class counsel. In addition, Schlegel and Musslewhite were designated by the court as lead counsel.

Ashcraft was never appointed lead counsel, but as a member of the PMC and as class action counsel, it undertook a number of tasks on behalf of the class, including attending depositions, reviewing documents obtained through discovery, and writing, filing, and opposing motions in the district court. During Musslewhite's tenure as a member of the PMC, he was listed as counsel of record in numerous filings with the district court and joined in motions concerning class certification, proposed forms of notice to class members, and other substantive issues in the litigation.

In September 1983, Yannacone moved for and was granted permission to withdraw as lead counsel and a member of the PMC. Ashcraft also withdrew from the PMC in September 1983. The order of the district court approving the withdrawal of Yannacone provided that the PMC would function as lead counsel. The PMC then consisted of Schlegel, Musslewhite, and the law firm of Baskin & Sears.

B.  *The Settlement Agreement, the Pending Appeals, and the Present Disqualification Motion*

Prior to May 7, 1984, with the class actions scheduled to go to trial on May 7, the parties negotiated a settlement of the class actions. The agreement called for the defendant chemical companies to pay a total of $180 million in settlement to the members of the plaintiff classes.

As a member of the PMC, Musslewhite had participated in the negotiations that led to the settlement agreement; he voted in favor of that agreement and spoke in support of it in the fairness hearings conducted by the district court in August 1984. Thereafter, however, Musslewhite became disenchanted with the proposed settlement

agreement, and in January 1985, he withdrew from the PMC.

In January, 1985, the district court found the settlement to be fair, reasonable, and adequate under the circumstances, *In re "Agent Orange" Product Liability Litigation*, 611 F.Supp. 1296 (E.D.N.Y.1985), and in May 1985, it approved a distribution plan for the settlement fund, *In re "Agent Orange" Product Liability Litigation*, 611 F.Supp. 1396 (E.D.N.Y.1985).

Following the entry of final judgments approving the settlement, Ashcraft and Musslewhite, on behalf of the thousands of plaintiffs they represent, filed appeals contending that the settlement should be set aside. Ashcraft, on behalf of its clients and on behalf of 21 law firms around the country claiming to represent some 3,000 additional class members, filed a brief challenging the fairness, reasonableness, and adequacy of the settlement and contending, in addition, that the district court lacked subject matter jurisdiction of the litigation and had denied individual claimants due process in certifying the class.

Musslewhite filed a brief adopting the arguments made in Ashcraft's brief and making additional challenges to the sufficiency of the notice given to class members and the adequacy of the approved settlement. In responding to the present motion, Musslewhite stated that his view of the adequacy of the settlement, which he initially had favored, was changed by information that came to light only after the agreement was negotiated, as to the number of class members who did not receive notice of the class action and the number of class members who have claims to be satisfied from the settlement fund. He stated that whereas prior to the negotiations it was believed that there were some 20,000 claims to be asserted, only 4,000 of which were serious, it now appears that there are some 243,000 claims to be asserted, more than 128,000 of which are serious. These revelations caused Musslewhite to change his view that the settlement was adequate, to urge the other members of the PMC to reject the settlement, and to challenge the settlement on appeal.

Schlegel, on behalf of the PMC as it is presently constituted, moved to disqualify Ashcraft and Musslewhite from representing parties on the pending appeals, principally on the grounds that the combination of (1) Ashcraft's representation of both class members and individuals who chose to opt out of the class, (2) Musslewhite's participation in the negotiation of the proposed settlement on behalf of the class, and (3) the prior roles of Ashcraft and Musslewhite as members of the PMC and class counsel, have given them "such a direct conflict of interest as to create a clear impropriety in violation of controlling standards of professional conduct." For the reasons below, we have concluded that the motion should be denied.

## II. DISCUSSION

As a matter of professional responsibility, an attorney owes a duty of loyalty to his client. This duty encompasses an obligation to defer to the client's wishes on major litigation decisions, not to divulge confidential communications from the client, and not to accept representation of a person whose interests are opposed to those of the client. *E.g.*, A.B.A. Code of Professional Responsibility EC 7–1, 4–1, and 5–2.

These obligations do not necessarily end when the attorney-client relationship ends. *E.g.*, *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir.1976); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 570–71 (2d Cir.1973). Thus, we have ordered disqualification of a party's attorney where, as a result of his prior representation of another client, "the attorney is at least potentially in a position to use privileged information concerning the other side . . . thus giving his present client an unfair advantage." *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979); *see, e.g.*, *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977); *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384; *In re Corn Derivatives*

*Antitrust Litigation*, 748 F.2d 157, 161 (3d Cir.1984) ("*Corn Derivatives*") ("In litigation, an attorney may not abandon his client and take an adverse position in the same case. This is not merely a matter of revealing or using the client's confidences and secrets, but of a duty of continuing loyalty to the client."), *cert. denied*, — U.S. —, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985).

Applying these traditional principles in non-class-action litigation, we have held that, in order to support a motion for disqualification, " 'the former client [need] show no more than that the matters embraced within the pending suit wherein his former attorney appears ... are substantially related to the matters or cause of action where the attorney previously represented him, the former client.' " *Funds of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d at 235 (quoting *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265, 268 (S.D.N.Y.1953) (Weinfeld, *J.*)). Although disqualification has the immediate adverse effect on the present client of depriving him of the attorney of his choice, removal of the attorney in such circumstances may be "necessary to preserve the integrity of the adversary process." *Board of Education v. Nyquist*, 590 F.2d at 1246.

■ Class action litigation presents additional problems that must be considered in determining whether or not to disqualify an attorney who has represented the class and who seeks to represent thereafter only a portion of the class. *See generally Corn Derivatives*, 748 F.2d at 162–65 (Adams, *J.*, concurring). These problems are created by, *inter alia*, the facts that there are, by definition, numerous class members and that there is often no clear allocation of the decision-making responsibility between the attorney and his clients. Further, though there will be common questions affecting the claims of the class members, it is not unusual for their interests, especially at the relief stage, to diverge. Such a divergence presents special problems because the class attorney's duty does not run just to the plaintiffs named in the caption of the case; it runs to all of the members of the class. "Thus, when a potential conflict arises between the named plaintiffs and the rest of the class, the class attorney must not allow decisions on behalf of the class to rest exclusively with the named plaintiffs. In such a situation, the attorney's duty to the class requires him to point out conflicts to the court so that the court may take appropriate steps to protect the interests of absentee class members." *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1176 (5th Cir.1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979).

Automatic application of the traditional principles governing disqualification of attorneys on grounds of conflict of interest would seemingly dictate that whenever a rift arises in the class, with one branch favoring a settlement or a course of action that another branch resists, the attorney who has represented the class should withdraw entirely and take no position. Were he to take a position, either favoring or opposing the proposed course of action, he would be opposing the interests of some of his former clients in the very matter in which he has represented them. *See* Waid, *Ethical Problems of the Class Action Practitioner: Continued Neglect by the Drafters of the Proposed Model Rules of Professional Conduct*, 27 Loyola L.Rev. 1047, 1062 (1981); *Developments in the Law—Class Actions*, 89 Harv.L.Rev. 1318, 1593 (1976); *Developments in the Law—Conflicts of Interest in the Legal Profession*, 94 Harv.L.Rev. 1244, 1448 (1981).

Nonetheless, as Judge Adams noted in his concurring opinion in *Corn Derivatives*, although automatic disqualification might "promote the salutary ends of confidentiality and loyalty, it would have a serious adverse effect on class actions." 748 F.2d at 164. When many individuals have modest claims against a single entity or group of entities, the class action may be the only practical means of vindicating their rights, since otherwise the expenses of litigation could exceed the value of the claim. In such class actions, often only the attorneys

who have represented the class, rather than any of the class members themselves, have substantial familiarity with the prior proceedings, the fruits of discovery, the actual potential of the litigation. And when an action has continued over the course of many years, the prospect of having those most familiar with its course and status be automatically disqualified whenever class members have conflicting interests would substantially diminish the efficacy of class actions as a method of dispute resolution. This is so both because the quality of the information available to the court would likely be impaired and because even if a class member were familiar with all the prior proceedings, the amount of his stake in the litigation might well make it unattractive for him to participate actively, either on his own or through new counsel.

Our system of justice demands that the interests of all concerned be accommodated as fairly as possible, and this accommodation must include the preservation of the class action form of litigation without a wasteful multiplication of its cost. In order to proceed efficiently and fairly and to protect the interests of all members of the class, the court needs, insofar as is practicable, the benefit of the participation of attorneys who are familiar with the litigation. This need has been accommodated in many cases in which a technical conflict may exist, for the attorney for the class is normally allowed to oppose the contentions of class members who have appeared in court in opposition to a proposed settlement of the class action, *see, e.g., Malchman v. Davis,* 706 F.2d 426 (2d Cir.1983); *Weinberger v. Kendrick,* 698 F.2d 61 (2d Cir. 1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983), although technically the Code of Professional Responsibility would seem to prohibit his doing so. *See generally* 2 H. Newberg, *Newberg on Class Actions* § 2710 (1st ed. 1977). In this case, for example, Schlegel, though moving to disqualify Ashcraft and Musslewhite for representing objectors in opposition to class members they formerly represented, himself represented as class counsel many of the objectors he now opposes.

Thus, we conclude that the traditional rules that have been developed in the course of attorneys' representation of the interests of clients outside of the class action context should not be mechanically applied to the problems that arise in the settlement of class action litigation. A motion to disqualify an attorney who has represented the entire class and who has thereafter been retained by a faction of the class to represent its interests in opposition to a proposed settlement of the action cannot be automatically granted. Rather, there must be a balancing of the interests of the various groups of class members and of the interest of the public and the court in achieving a just and expeditious resolution of the dispute.

Relevant considerations in determining whether the moving party has shown sufficient ground for disqualification of prior class counsel include "the amount and nature of the information that has been proffered to the attorney, its availability elsewhere, its importance to the question at issue, such as settlement, as well as actual prejudice that may flow from that information." *Corn Derivatives,* 748 F.2d at 165 (Adams, *J.,* concurring). The court must consider as well the costs to the class members of requiring that they obtain new counsel, taking into account such factors as the nature and value of the claim they are presenting, the ease with which they could obtain new counsel, the factual and legal complexity of the litigation, and the time that would be needed for new counsel to familiarize himself with all that has gone before.

In the present litigation, we conclude that the weighing of the various interests requires that the motion to disqualify Ashcraft and Musslewhite be denied. First, we note that Schlegel in his moving papers has failed to allege any actual prejudice that would result if Ashcraft and Musslewhite were not disqualified. He has not indicated that client confidences were received by Ashcraft or Musslewhite from pro-settlement members of the class. Nor,

if such confidences be assumed, has he indicated how or even whether such confidences would be violated by these firms' continued participation in the appeals. Schlegel's general allegations of conflict of interest are insufficient to warrant a finding of prejudice.

Several factors weigh against disqualification here. Between them, Ashcraft and Musslewhite represent more than 3,000 members of the plaintiff class who oppose the proposed settlement. The actions have been pending for some eight years, and we have been advised in connection with one of the appeals emanating from the proposed settlement that "hundreds of thousands of private corporate documents [were] produced in the course of discovery." Brief for Defendants-Cross-Appellants Dow Chemical Co., *et al.*, at 11, *In re "Agent Orange" Product Liability Litigation*, Nos. 85–6061, *et al.* (argued April 10, 1986). If the thousands of objectors were now deprived of the services of Ashcraft and Musslewhite, all of the choices confronting the court would be unattractive. It could require the objectors to proceed promptly, which would mean that they would be unrepresented or would be represented by attorneys who are not fully familiar with the prior course of the litigation and the hundreds of thousands of documents turned up in discovery. In the context of the present motion, which was made to this Court in December 1985 in connection with appeals to be argued in April 1986, we doubt that new counsel could have been found who would have been willing and able to assimilate these documents in such a short period. Alternatively the court could allow the objectors time for their new attorneys to familiarize themselves with the proceedings and the documents. This, of course, would delay for the other thousands of class members who favor the settlement the receipt of compensation they deem adequate, or at least acceptable, for their injuries.

Finally, we note that the size of the proposed settlement in light of the large number of class members could itself constrain the ability or incentive of objecting class members to obtain new counsel who would fully familiarize themselves with the pertinent facts of the litigation. The settlement distribution plan approved by the district court provided for a maximum payment of $12,800 to any one class member, with an average payment of approximately $4,200. *In re "Agent Orange" Product Liability Litigation*, 611 F.Supp. 1396, 1423. Musslewhite's estimate as to individual recovery amounts is even lower, for he contends that there are some 243,000 claimants. If he is correct, the arithmetical mean share of the $180 million settlement fund, plus interest, would amount to approximately $850. *Compare Corn Derivatives*, 748 F.2d at 166 (Adams, *J.*, concurring) (disqualification of firm that represented on appeal client objecting to proposed settlement and that previously represented clients who supported settlement was not inappropriate where firm had represented only three class members, a large amount was at stake for each litigant, and the party potentially forced to proceed without its chosen counsel was a large corporation with ample resources to secure new counsel).

In all the circumstances, we conclude that disqualification of Ashcraft and Musslewhite is not "necessary to preserve the integrity of the adversary process." *Board of Education v. Nyquist*, 590 F.2d at 1246.

## CONCLUSION

The motion for disqualification of counsel is denied.