**Daryl HAMMOND, Plaintiff,**

v.

**The GOODYEAR TIRE & RUBBER COMPANY; the Firestone Tire & Rubber Company aka Firestone/Bridgestone; Kelsey–Hayes Company aka Hayes–Wheels International, Inc.; Denman Tire & Rubber Company aka Denman Tire Corporation; Food Resources, Inc.; Budd–Mar Tires Inc.; the Budd Company; the Budd Acquisition Corp., Defendants.**

No. 95–CV–1530.

United States District Court, N.D. New York.

Aug. 15, 1996.

Poissant & Nichols, Malone, NY, for Plaintiff; Judith A. Pareira, of counsel.

Herrick, Feinstein, New York City, for Defendant Firestone/Bridgestone, Inc.; Susan T. Dwyer, of counsel.

Gallagher, Gossen & Faller, Garden City, NJ, for Defendant Goodyear Tire.

Thullez, Ford, Gold & Conolly, Albany, NY, for Defendant Firestone/Bridgestone, Inc.

Block & Colucci, Buffalo, NY, for Defendant Kelsey–Hayes.

Cusick, Hacker & Murphy, Latham, NY, for Defendants Denman Tire, Budd Company, and Budd Acquisition.

Drew, Eckl & Farnham, Atlanta, GA, for Defendant Denman Tire.

Stinson, Mag & Fizzell, Kansas City, MO, for Defendant Budd Company.

### MEMORANDUM, DECISION, AND ORDER

HURD, United States Magistrate Judge.

Presently before the court is the defendant Firestone/Bridgestone's motion to disqualify the plaintiff's law firm. Oral argument on this matter was heard by the court on May 13, 1996, in Utica, New York, and the court reserved decision. On July 15, 1996, an order was issued inviting, but not requiring, the plaintiff's attorneys to submit for the court's *in camera* review, any supplemental affidavits and supporting documents to clarify Joseph M. Poissant, Esq.'s present financial interest, if any, in the plaintiff's law firm. In response, defendant submitted a supplemental affirmation. Plaintiff's law firm accepted the invitation and those documents were considered by the court in reaching the conclusions presented in this order.

### I. FACTS

The case at bar involves an action for personal injury by the plaintiff, Daryl Hammond ("Hammond"). Plaintiff is represented by the law firm of Poissant & Nichols, located in Malone, New York. Hammond, a United States Army Reservist, was injured when the wheel and tire he was installing onto the spare tire rack of a 1970 Jeep truck exploded. The Jeep was owned and in the possession of the United States Army. Defendant Firestone Tire & Rubber Company, also known as Firestone/Bridgestone ("Firestone"), manufactured the wheel assembly involved in the accident. The wheel in question is a multi-piece rim assembly.

In 1981 and 1982, plaintiff's predecessor law firm, Poissant & Twiss, represented Firestone.[1] That case also involved a multi-

piece rim assembly wheel, just as the present case. Furthermore, both cases involve personal injuries and are based on negligence, strict product liability, and failure to warn theories. Specifically, both cases involve claims which assert that the multi-piece wheel was defectively designed and capable of explosively separating under pressure.

Joseph M. Poissant, Esq. ("Poissant") was substantially involved in the 1981 litigation. He was involved in the pretrial phases and also served as lead counsel for Firestone. He was assisted in that trial by Ms. Frances Prell, Esq. ("Prell"), who is still the current principal outside counsel for Firestone in all multi-piece rim litigation.

In order to prepare for the 1981 litigation, Poissant attended a meeting in Washington, D.C. on March 17, 1981, with William Freivogel, Esq., the principal counsel for Firestone at that time who was responsible for coordinating and supervising all of Firestone's rim product's on a national level. At the meeting, Poissant became privy to Firestone's litigation strategies and tactics in defending multi-piece rim actions. Thereafter, Poissant and Prell worked closely on the 1981 action in Franklin County, New York. The 1981 case was tried before a jury and lasted three weeks. Poissant acted as lead counsel, performed the opening statement, participated in the preparation of Firestone's lay and expert witnesses, and cross-examined witnesses. One of Firestone's expert witnesses, Robert Lee, testified at the 1981 trial and is expected to testify at the trial of the case presently before this court. Poissant billed more than 270 hours to Firestone and collected over $70,000 in legal fees.

Counsel for defendant submit that Poissant was exposed to Firestone's confidences, secrets, privileged information, and client information relating to the defense of multi-piece rim litigation. Firestone argues that they have been involved in multi-piece rim litigation for over thirty years, and as such, the defense strategies, documentary evidence, and many of the same witnesses will

---

1. The name of the 1981–82 action was *Hammond v. John Deere Company, et. al.,* Index No. 73–413, Supreme Court of Franklin County, New York. The plaintiff's names are Hammond by coincidence only.

be used in the current litigation before this court as were used in the 1981 case in which Poissant was involved.

Poissant does not dispute the fact that he was involved in the litigation defending Firestone in 1981. Plaintiff's attorneys contend that Poissant has not had any further dealings with Firestone since the resolution of the 1981 action. Poissant & Nichols further submit that Poissant has sold all of his shares in the law firm and does not receive any profit from the firm. Further, Hammond's attorneys contend that Poissant did not know of, nor have anything to do with, the pending litigation against Firestone, nor did they themselves know of the prior litigation. Hammond's attorneys further state that they will not have any contact with Poissant or any other attorneys who were involved in that litigation. Finally, the plaintiff's attorneys argue that all law firm files, including those from the 1981 case, are destroyed after three years.

Firestone's attorneys attempted to resolve this matter with the plaintiff's attorneys without court intervention in a letter dated February 23, 1996, prior to the filing of this motion to disqualify. The defendant's attorneys were willing to withdraw any objections regarding the plaintiff's firm if plaintiff's attorneys would stipulate to five things. Specifically, the defendant's attorneys wanted assurances that: (1) no attorney involved in the 1981 litigation would be involved in the current litigation; (2) no lawyer involved in the 1981 litigation has a financial interest in the firm at the present time; (3) no attorney who shared in the fees paid to Poissant's firm in the 1981 action would share in the fees collected in the current action; (4) no attorneys involved in the prior litigation, within or outside of the firm, would have any contact with the attorneys in the present litigation; and (5) that no files from the 1981 litigation were in the possession of the attorneys in the present litigation and any that are discovered at a later date would be forwarded to the defendant's attorneys without review by the attorneys at Poissant & Nichols. Plaintiff's attorneys refused to sign the proposed stipulation and offered no explanation other than the declaration that no conflict of interest exists in this matter.

In reaching a conclusion regarding this matter, the court has considered the motion papers of both sides, arguments heard on May 13, 1996, and papers submitted by both sides for *in camera* review by the court.

## II. *DISCUSSION*

The Code of Professional Responsibility provides that an attorney must preserve the confidences and secrets of a client.

> Except when permitted by DR 4–101(C), a lawyer shall not knowingly:
>
> 1. Reveal a confidence or secret of a client.
>
> 2. Use a confidence or secret of a client to the disadvantage of the client.
>
> 3. Use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure.

N.Y.Jud.Law § DR 4–101B (McKinney 1992). The Code of Professional Responsibility further provides that attorneys should avoid conflict of interests with former clients.

> Except with the consent of a former client after full disclosure a lawyer who has represented the former client in a matter shall not:
>
> 1. Thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.
>
> 2. Use any confidences or secrets of the former client except as permitted by DR 4–101(C) or when the confidence or secret has become generally known.

N.Y.Jud.Law § DR 5–108A (McKinney 1992).

The Second Circuit has held that in order to ensure adherence to this principle, an attorney may be disqualified from representing a client in a case if:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's

prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir.1983) (citations omitted); *United States v. DiTommaso*, 817 F.2d 201 (2d Cir. 1987). However,

'there is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters we must be solicitous of a client's right freely to choose his counsel—a right which must be balanced against the need to maintain the highest standards of the profession.'

*Id.*, (quoting *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)). The court will address the three *Evans* criteria in turn.

### A. *Former Client*

█ Plaintiff's attorneys submit that Poissant is no longer an active member in the law firm, all files regarding the prior litigation in 1981 have been destroyed, and no attorneys who worked in that prior litigation are presently employed in the firm. For these reasons, plaintiff's attorneys argue that Firestone is not a former client, and therefore they should not be disqualified. Firestone's attorneys submit that Poissant was substantially involved in the 1981 litigation, is still involved in the firm today, and a conflict of interest therefore exists.

First, the court again notes that Poissant was significantly immersed in the 1981 litigation. He attended a meeting in Washington, D.C. to discuss trial strategy that was being used nationwide in all multi-piece rim litigation. He was involved in preparing witnesses, including expert witnesses, on behalf of Firestone. During the three week trial, he performed the opening statement, examined and cross-examined witnesses, and acted as lead counsel. Finally, Poissant billed in excess of 270 hours and collected more than $70,000 from Firestone.

Second, the court finds that Poissant is significantly involved in the plaintiff's law firm at the present time. In the 1996 Martindale–Hubbell Law Directory, Joseph M. Poissant is the first attorney named under the Poissant & Nichols firm. His position is listed as "member," and there is no indication that Poissant has retired from the firm. Furthermore, the letterhead of Poissant & Nichols also lists Joseph M. Poissant as the first attorney in the firm and there is also no indication that Poissant has retired from the firm. In addition, after an *in camera* review of materials submitted by the plaintiff's attorneys, it is clear to this court that Poissant still has a substantial interest in the continuing success of the Poissant & Nichols law firm. The court notes that among the terms set forth by the defendants in their proposed stipulation to the plaintiff's attorneys, was that no attorneys who were involved in the 1981 litigation share in any way in the fees collected in the case at bar. It is evident to this court that one reason why the plaintiff's attorneys chose not to sign the proposed stipulation was precisely because Poissant still has an interest in the firm.

Finally, the plaintiff's attorneys have not been consistent in their position regarding Poissant's involvement in their firm. First, defendants' attorneys were informed by Poissant that he had retired from the firm, was living in Florida, and that he had no financial interest in the firm. Clearly, from what has been discovered during this motion, Poissant does have an interest in the firm since he receives health benefits and is paid a salary when he comes into the firm's office. (Tr. Oral Argument, May 9, 1996, at 16–17). Second, when responding to the proposed stipulations set forth by the defendants' attorneys, plaintiff's attorneys seemed unwilling to stipulate to any of the five things set forth. However, in their responsive papers, plaintiff's attorneys were willing to stipulate to some of the proposals, including the fact that the files from the 1981 litigation had been destroyed. In short, at the very least, plaintiff's attorneys were uncooperative in trying to resolve this dispute.

Thus, the court finds that the first prong of the *Evans* test has been met by the defendant's attorneys.

## B. *Substantial Relationship*

█ In defining the "substantial relationship" test, the Second Circuit has set forth a clear standard. Disqualification should be granted "upon a showing that the relationship between the issues in the prior and present cases is 'patently clear' ... [or] when the issues involved have been 'identical' or 'essentially the same.'" *Government of India,* 569 F.2d at 739–40 (citing *Silver Chrysler Plymouth Inc. v. Chrysler Motors Corp.,* 518 F.2d 751, 754–56 (2d Cir.1975); *NCK Organization, Ltd. v. Bregman,* 542 F.2d 128, 135–36 (2d Cir.1976) (concurring opinion); *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir.1975); *Emle Indust., Inc. v. Patentex, Inc.,* 478 F.2d 562, 572 (2d Cir.1973); *Motor Mart, Inc. v. Saab Motors, Inc.,* 359 F.Supp. 156, 158 (S.D.N.Y.1973)).

There is little doubt that the 1981 action and the current action are essentially the same. First, the case at bar involves similar issues and similar claims. The 1981 case involved a multi-piece rim, just as the present case. Furthermore, both cases involve personal injuries and are based on negligence, strict product liability, and failure to warn theories. Specifically, both cases involve claims which assert that the multi-piece wheel was defectively designed and capable of explosively separating under pressure.

Second, the factual allegations and strategies used to defend those allegations are essentially universal in all multi-piece rim litigation. As pointed out by Susan T. Dwyer, Esq. at oral argument, one of the main arguments in all multi-piece rim litigation is that a single piece rim is a safer alternative to a multi-piece rim. (Tr. Oral Argument, May 9, 1996, at 10). Undoubtedly, this was argued in the 1981 trial and will be argued in the case at bar.

Third, many of the same witnesses, including defendant's expert witnesses, who appeared in the 1981 action will appear in the case at bar. Thus, the very same individuals who were prepared by Poissant in 1981 will be called to testify in the present case. Con-sequently, the same strategies and confidences that were imparted upon Poissant through those witnesses will exist in the present case.

Thus, the subject matter of the 1981 litigation is substantially similar to the case at bar and the second prong of the *Evans* test has also been met.

## C. *Privileged Information*

█ The final prong of the *Evans* test involves a determination of whether or not the attorney involved in the prior case had access to confidences or other privileged information. "Except when permitted by DR 4–101(C), a lawyer shall not knowingly ... [r]eveal a confidence or secret of a client [or] [u]se a confidence or secret of a client to the disadvantage of the client." N.Y.Jud.Law § DR 4–101B (McKinney 1992)); *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225, 236 (2d Cir.1977). "Moreover, the court need not, indeed cannot, inquire whether the lawyer did, *in fact,* receive confidential information during his previous employment ... [but] where 'it can reasonably be said that in the course of the former representation the attorney *might* have acquired the information related to the subject matter of his subsequent representation,' it is the court's duty to order the attorney disqualified." *Emle Indus., Inc.,* 478 F.2d at 571 (emphasis in original) (quoting *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp 265 (S.D.N.Y.1953)).

At this point, it should be clear the Poissant certainly had access to privileged information and confidences of Firestone during the 1981 litigation. As discussed earlier, the Firestone multi-piece rim litigation has been ongoing for more than thirty years and the issues and trial strategies have remained the same. Poissant acquired detailed knowledge of confidences, trial strategies, expert information, and documentary evidence through his representation of the defendant in 1981. Thus, the final prong of the *Evans* test has been met.

While the court is sensitive to the desire of a client to be represented by the attorney of his or her choosing, it cannot in good ethical conscience, permit the Poissant & Nichols firm to continue representing the plaintiff in

this case. Firestone has met the difficult burden required in *Evans* and has satisfied the court that a conflict of interest is insurmountable in this case. The court is further aware that the small town of Malone, New York, is not overflowing with attorneys. However, the court is confident that the plaintiff will be able to obtain adequate representation from another source in upstate New York without extreme hardship.

Accordingly, it is

ORDERED that

1. The law firm of Poissant & Nichols is disqualified from representing the plaintiff in this action;

2. The plaintiff shall retain substitute counsel and a notice of appearance shall be filed and served on or before October 1, 1996;

3. Upon the failure of plaintiff to retain substitute counsel by the above date, he will be appearing *pro se;*

4. Discovery is stayed until October 1, 1996; and

5. The *in camera* submissions by the parties shall be filed under seal, to be opened only upon further order of the court.

IT IS SO ORDERED.