James A. SCHWED, and George H. McMaster, Individually, and on behalf of all other persons similarly situated, Plaintiffs,

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

No. 94–CV–1308.

United States District Court, N.D. New York.

Jan. 22, 1998.

McNamee, Lochner, Titus & Williams, P.C., Albany, NY, for Plaintiffs; David J. Wukitsch, of counsel.

Epstein Becker & Green, P.C., New York City, for Defendant; Ronald M. Green, of counsel.

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

Plaintiffs filed this action on October 7, 1994, alleging, inter alia, that defendant discriminated against them in their employment based upon their age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. The action was subsequently certified as a class action. Defendant General Electric Company ("G .E.") moves for disqualification of plaintiffs' attorneys. Plaintiffs oppose.

## I. BACKGROUND.

The plaintiff class has been represented by McNamee, Lochner, Titus & Williams, P.C. ("McNamee Firm") since the institution of the lawsuit. Defendant was initially represented by Bond, Schoeneck & King, L.L.P. ("BSK"). On October 7, 1997, Epstein Becker & Green, P.C. ("Epstein Firm") was substituted as counsel for the defendant. This motion to disqualify the McNamee Firm followed shortly thereafter.

Attorney Michael J. Grygiel ("Grygiel") was employed by BSK from 1991 through January 15, 1997. While employed by BSK, Grygiel defended G.E. in two other age discrimination law suits, *Arendt v. General Elec. Co.*, No. 1664–95 (N.Y.Sup.Ct), and *Raco v.*

*General Elec. Co.,* No. 95–CV–0062, 1996 WL 679789 (N.D.N.Y.). Grygiel reviewed pleadings, prepared answering pleadings, performed legal research, drafted motion papers, drafted opposition to a motion, and conferenced with other BSK counsel, G.E.'s in-house counsel, and other G.E. employees. During this time, BSK represented G.E. in this case as well as *Abrams v. General Elec. Co.,* No. 95–CV–1734 (N.D.N.Y.). BSK's representation of G.E. in *Abrams* ended on July 8, 1996. *Abrams* is another class action age discrimination law suit involving the same layoff policy at issue in this case and in the *Arendt* case. Grygiel did not work directly on this case or on *Abrams,* although other BSK attorneys did so.

On January 15, 1997, Grygiel became "of counsel" to the McNamee Firm. Neither Grygiel nor the McNamee Firm notified G.E. of Grygiel's new employment and of the potential for a conflict of interest. While Grygiel did not then directly participate in the representation of the plaintiffs, the McNamee Firm continued its representation of plaintiffs in this suit and in *Abrams.* Grygiel and the McNamee Firm have been disqualified as counsel for plaintiffs in the *Abrams* case. *See Abrams v. General Elec. Co.,* No. 95–CV–1734 (N.D.N.Y. Jan. 16, 1998).

## II. DISCUSSION

 An attorney must preserve a client's confidences and secrets, and must not use a client's confidence or secret to the client's disadvantage. N.Y.Jud.Law app. DR 4–101(B) (McKinney 1992). Attorneys must also avoid conflicts of interest with former clients, unless the conflict has been fully disclosed and the former client consents. N.Y.Jud.Law app. DR 5–108(A) (McKinney 1992). Thus,

[e]xcept with the consent of a former client after full disclosure a lawyer who has represented the former client in a matter shall not:

1. Thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.

2. Use any confidences or secrets of the former client except as permitted by DR 4–101(C) or when the confidence or secret has become generally known.

*Id.* An attorney, therefore, may be disqualified from representing a client in a case if:

(1) the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hammond v. Goodyear Tire & Rubber Co.,* 933 F.Supp. 197, 199–200 (N.D.N.Y.1996) (quoting *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir.1983)). In addition, an attorney has a continuing duty of loyalty to a client which constrains the attorney from representing another party whose interests are adverse to the interests of the former client. *In re "Agent Orange" Prod.Liab.Litig.,* 800 F.2d 14, 17 (2d Cir.1986) (hereinafter "Agent Orange").

 Finally, where an individual attorney is precluded from a representation due to a conflict, no other affiliated attorney or law firm may accept or continue such representation. N.Y. Jud. Law app. DR 5–105(D) [1]; *Marshall v. New York Div. of State Police,* 952 F.Supp. 103, 110 (N.D.N.Y.1997); *Decora Inc. v. DW Wallcovering, Inc.,* 899 F.Supp. 132, 139 (S.D.N.Y.1995). The presumption that an attorney shares confidential information with law firm attorneys which is implicit in this rule may only be rebutted by procedures designed to assure that the disqualified attorney cannot share the confidences of the former client. *Marshall,* 952 F.Supp. at 110; *Decora Inc.,* 899 F.Supp. at 139.

---

1. The Disciplinary Rule states that "[w]hile lawyers are associated in a law firm, none of them shall knowingly accept or continue employment when any one of them practicing alone would be prohibited from doing so under DR 5–101(A), DR 5–105(A), (B) or (C), DR 5–108, or DR 9–101(B) except as otherwise provided therein." *Id.*

■ It is undisputed that G.E. is a former client of attorney Grygiel, and that Grygiel and the McNamee Firm now represent a party adverse to G.E. Accordingly, substantial relationship of the representations, access to confidential information, and disqualification of Grygiel's current firm will be analyzed.

## A. Substantial Relationship

■ Where the " 'relationship between the issues in the prior and present cases is "patently clear" ... [or] when the issues involved have been "identical" or "essentially the same" ' " disqualification is warranted. *Hammond,* 933 F.Supp. at 201 (quoting *Government of India v. Cook Indus., Inc.,* 569 F.2d 737, 739–40 (2d Cir.1978)).

BSK represented G.E. in four law suits: *Schwed* (the case at bar), *Arendt, Raco,* and *Abrams.* Grygiel personally worked on *Arendt* and *Raco.* In *Arendt,* it was alleged that G.E. discriminated against plaintiffs based upon their age when they were laid off from their employment at G.E.'s Corporate Research and Development Center, in Niskayuna, New York. It is undisputed that Grygiel spent considerable time on the *Arendt* file, billing over one hundred hours. Moreover, BSK asserts that the same layoff policy at issue in this case is at issue in *Arendt.* (D'Ambrosio Aff. ¶ 6.) While the *Arendt* case involves state law claims and the present litigation involves federal law claims, both revolve around the central issue of age discrimination in a layoff. It is therefore apparent that the issues in the prior representation are essentially the same as the those in the present case.

The McNamee Firm argues that because *Arendt* involved state law claims, a different layoff, a different facility, different employees, different managers, and a different business unit, *Arendt* and the present action are not substantially related. The central issue in both cases, however, is age discrimination resulting from application of a corporate layoff policy. *Arendt* and the present case clearly are substantially related.

Grygiel's prior representation in *Arendt* alone would suffice to support finding a substantial relationship between the prior and present representations; his prior representation of G.E. in *Raco* is merely additive. *Raco* involved claims regarding discrimination based upon age and gender, and wrongful discharge. While the present case involves layoffs and *Raco* involved wrongful denial of tuition assistance, both involve, discrimination. Moreover, the alleged discrimination in *Raco* and in the present case occurred in the same business unit. Therefore, Grygiel's prior representation in *Raco* was substantially similar to the issues in the present case.

Additionally, while not relied upon by G.E. in this disqualification motion, it is notable that BSK represented G.E. in the present action, *Schwed,* and in *Abrams,* at the same time during which Grygiel worked for that firm. Just as an individual's prior representations are imputed to a firm, the firm's representations must be imputed to the individual. *Cf. Marshall,* 952 F.Supp. at 110. Thus, if BSK's representation in *Schwed* is imputed to Grygiel, then he is now representing an adverse party in the very same litigation.

## B. Confidential Information

■ Disqualification is warranted where an attorney had access to confidential information. *Marshall,* 952 F.Supp. at 109; *Hammond,* 933 F.Supp. at 201. The attorney need not have actually obtained confidential information; it is sufficient if the attorney might reasonably have acquired information related to the subsequent representation. *Marshall,* 952 F.Supp. at 109; *Hammond,* 933 F.Supp. at 201.

Grygiel had access to confidential information by virtue of his prior representation of G.E. in substantially similar actions, *Arendt* and *Raco.* Confidential G.E. information was necessarily imparted to him in order for him to prepare an answer, motion, and opposition to a motion. Grygiel participated in meetings, both with other BSK attorneys and G.E. employees, including meetings at which the present case was discussed.[2] (D'Ambro-

---

**2.** Grygiel asserts that he does not possess any confidential information and does not recall any

sio Aff. ¶ 3.) Grygiel had access to all BSK case files and computer files. BSK represented G.E. in two additional cases, *Schwed* and *Abrams,* which involve substantially similar claims and about which other BSK attorneys must have possessed confidential information.

The McNamee Firm argues that BSK's failure to object between January and October 1997, while BSK was still representing G.E., implicitly demonstrates that Grygiel did not possess confidential information relating to this law suit. Again, G.E. need not show that Grygiel actually possessed confidential information, only that he had access to it. *See Marshall,* 952 F.Supp. at 109; *Hammond,* 933 F.Supp. at 201.

Clearly it can reasonably be said that Grygiel had access to confidential information during the course of the prior representation which is related to the current representation. *See Marshall,* 952 F.Supp. at 109; *Hammond,* 933 F.Supp. at 201. In fact, it would be unreasonable to say that he did not have access to related confidential information.

### C. The McNamee Firm

█ Having found that attorney Grygiel must be disqualified, the McNamee Firm must also be disqualified unless it rebuts the presumption that Grygiel has shared confidential information with other attorneys in the firm. *See Marshall,* 952 F.Supp. at 110. In some cases, law firms can avoid disqualification by adopting a screening method which prevents the disqualified individual attorney from imparting confidential information to other attorneys in the law firm. *Marshall,* 952 F.Supp. at 110. However, the McNamee Firm failed to initiate any screening method to prevent inadvertent disclosure of confidential information by Grygiel to other attorneys in the firm. Thus, the McNamee firm must be disqualified from continuing to represent plaintiffs in this matter.

█ The McNamee Firm urges that G.E. will not be prejudiced by permitting continued representation of plaintiffs and that plaintiffs will be significantly prejudiced should the McNamee Firm be disqualified. The McNamee Firm further argues that because BSK failed to move for disqualification between January 15, 1997, when Grygiel joined the McNamee Firm, and October 7, 1997, when BSK was replaced as G.E.'s counsel, that G.E. should now be prohibited from challenging the continued representation. This is in essence a laches argument.

█ Ordinarily a law firm or an attorney may not rely upon laches to insulate it from disqualification. *Baird v. Hilton Hotel Corp.,* 771 F.Supp. 24, 28 (E.D.N.Y.1991). In a case of extreme delay in moving for disqualification, where the circumstances are extraordinary, a motion to disqualify may be denied based upon laches. *Emle Indus., Inc. v. Patentex Inc.,* 478 F.2d 562, 574 (2d Cir. 1973). However, even in extraordinary circumstances a motion to disqualify will be granted unless prejudice due to the delay is demonstrated, because disqualification is in the public interest where there is an ethical violation. *Id.* (three-year delay insufficient to invoke doctrine of laches).

The factual situation in *Baird* demonstrates the principles just stated. Attorney Pluchino worked for a firm defending the party seeking disqualification. 771 F.Supp. at 25. Pluchino actively participated in the defense of the defendant during discovery. *Id.* Pluchino then moved to a new law firm, the Katz firm, which represented the plaintiff in the same action. The Katz firm placed procedures into effect to prevent Pluchino from disclosing confidential information with other attorneys in the firm. *Id.* at 25–26. Some seven months later, the defendant substituted another firm. *Id.* at 25. An attorney at that firm noticed Pluchino's name on the Katz firm's letterhead and immediately sought disqualification. *Id.* The Katz firm argued, inter alia, that it should not be disqualified from the representation because of the delay in seeking disqualification. *Id.* at 27–28.

---

discussions while he was employed at BSK regarding the instant case. (Grygiel Aff. ¶ 4–5.) There is no reason to doubt the sincerity and truth of Grygiel's assertions. It need not be shown that Grygiel does, in fact, have confidential information, but only that he had access to such information. *See Marshall,* 952 F.Supp. at 109; *Hammond,* 933 F.Supp. at 201.

While recognizing that the plaintiff would suffer some prejudice by the disqualification, particularly since it was merely five days prior to trial, the court refused to apply laches. *Id.* at 28. The *Baird* Court chastised the disqualified firm for its failure to formally notify the defendant of the potential conflict. *Id.* Such notification, the court pointed out, would have permitted the defendant to review the record and determine if it should move for disqualification. *Id.* If the Katz firm had notified the defendant, the motion to disqualify would have been timely, and prejudice due to closeness to trial would not be at issue. *Id.*

Here approximately ten months passed between the time Grygiel moved from BSK to the McNamee Firm and the time G.E. moved to disqualify Grygiel. However, at no time did BSK, Grygiel, or the McNamee Firm ever notify G.E. of Grygiel's move and the potential conflict. Any prejudice to plaintiffs, conflicts of interest, or grounds for disqualification could have been avoided or certainly lessened if appropriate steps had been taken by the McNamee Firm at the time it was considering employing Grygiel as "of counsel."

The McNamee Firm should have notified BSK and G.E. in writing of the potential conflict before making a final decision to employ Grygiel.[3] It should have made full disclosure in writing of the circumstances and inquired if G.E. had any objection to the McNamee Firm continuing to represent the plaintiffs in this action if Grygiel joined the firm. If G.E. consented in writing to the continuing representation, the McNamee Firm would have had no conflict with Grygiel's former client. If G.E. objected, the McNamee Firm could have attempted to workout a formal screening procedure satisfactory to G.E. If that failed, the McNamee Firm then would have had to decide whether or not to hire Grygiel. If it still decided to employ Grygiel, at the very least a formal screening procedure should have been instituted to insulate him from revealing any confidential information and to remove any

appearance of impropriety. Again, the McNamee Firm should have notified G.E. in writing of the details of the procedure. None of the above was done.

Now is not the time to beseech the court to permit the representation to continue despite a conflict of interest, while attempting to blame another firm for its own inaction. *See id.* at 28. Furthermore, it would be ineffective to now order some sort of insulating screening procedure, since there has been no such procedure in place for well over one year. The public interest is best served by disqualifying conflicted attorneys and law firms, and thereby avoiding the appearance of impropriety. *See id.*

The McNamee Firm argues that it should not be disqualified due to the substantial prejudice plaintiffs in this class action suit would suffer, citing *Agent Orange* for the proposition that a balancing test is appropriate in determining disqualification motions in class action law suits. The balancing test used by the *Agent Orange* Court, however, would be inappropriate to use in this case. First, in *Agent Orange* the prior representation was for all the class action plaintiffs, and the subsequent representation was for a discreet group of plaintiffs whose interests had diverged from the others'. 800 F.2d at 18. Second, the potential conflict arose only at the relief stage, in relation to a proposed settlement. *Id.* Third, the court has a duty to protect the interests of all class members when apprised of potential conflicts among the members of the class. *Id.* The *Agent Orange* Court recognized these special circumstances, and characterized it this way:

> A motion to disqualify an attorney who has represented the entire class and who has thereafter been retained by a faction of the class to represent its interests in opposition to a proposed settlement of the action cannot be automatically granted. Rather, there must be a balancing of the interests of the various groups of class members and of the interest of the public and the court

---

**3.** The McNamee Firm was aware of the potential conflict from direct discussions with Grygiel. (*See* Wukitsch Aff. at ¶ 10.) Despite Grygiel's expertise and experience in the field of age dis-

crimination, the fact that the McNamee Firm never assigned him to work on this case further demonstrates that it was aware of the problem.

in achieving a just and expeditious resolution of the dispute. *Id.* at 19. None of these distinguishing special circumstances are present in this case. Although this is a class action, the conflicted attorney represented the defendant and now is "of counsel" for the firm that represents the entire class in a substantially similar suit against the defendant. The conflict issue arose during the discovery phase of the suit, not at the relief stage. While there is a duty to protect all members of the plaintiff class in this suit, there is also a duty to preserve the integrity of the adversary process. *See id.* at 18. The adversary process can best be protected in this action by disqualifying the McNamee Firm.

## III. CONCLUSION

Grygiel must be disqualified due to his prior direct representation of G.E. in matters substantially similar to this action, his former firm representing G.E. in this action at the time he was employed by them, and his access to confidential information. The McNamee Firm, which now employs Grygiel, must be disqualified from representing plaintiffs in this action, whose interests are clearly adverse to G.E. The McNamee Firm is not saved from the disqualification because it never notified G.E. of the conflict nor instituted any screening procedure to prevent Grygiel from disclosing confidential information to other members of the firm. Laches is not a defense to the disqualification, nor is prejudice to the plaintiff class.

: This decision is made with great reluctance not only because of respect for the McNamee Firm, which deservedly enjoys a fine reputation in the legal community, but also because of the enormous amount of effort it has expended on behalf of the plaintiffs and the hardship its absence will cause. It is particularly distressing because the situation easily could have been avoided. However, it must be emphasized that neither the McNamee Firm nor Grygiel did anything improper. Rather, it was just the inadvertent failure to take the necessary precautions to avoid the appearance of a conflict which leaves no choice but to disqualify.

Accordingly, it is

ORDERED that

1. defendant's motion to disqualify is GRANTED;

2. the law firm of McNamee, Lochner, Titus & Williams, P.C. is disqualified from representing the plaintiffs in this action, except with regard to any appeal of this Memorandum Decision and Order or with assisting plaintiffs retain substitute counsel;

3. all other proceedings in this action are stayed pending further order of the court.

IT IS SO ORDERED.