## In re CORN DERIVATIVES ANTITRUST LITIGATION (MDL 414).

**Appeal of JOHN E. KOERNER & CO., INC., Imperial Products Corporation, and Pan-O-Gold, Inc.**

No. 83–5729.

United States Court of Appeals, Third Circuit.

Argued June 12, 1984.

Decided Nov. 15, 1984.

Louis R. Koerner, Jr. (argued), Law Offices of Louis R. Koerner, Jr., New Orleans, La., for John E. Koerner & Co., and Imperial Products Corp.

John A. Cochrane (argued), Cochrane & Bresnahan, St. Paul, Minn., for Pan-O-Gold Baking Co., Inc.

Clive S. Cummis (argued), Charles J. Walsh, Sills, Beck, Cummis, Zuckerman, Radin & Tischman, P.A., Newark, N.J., for Food Foundation, Inc.

Arnold Levin, Levin & Fishbein, Philadelphia, Pa., for Kelco Industries.

David Berger, Berger & Montague, P.C., Philadelphia, Pa., for Golden Quality Ice Cream Co.

Douglas V. Rigler, Foley & Lardner, Washington, D.C., for G. Heileman Brewing Co., Inc.

Joel C. Meredith, Bruce K. Cohen, Steven J. Greenfogel, Meredith & Cohen, P.C., Philadelphia, Pa., for Eastern Candy Co., Inc.

Harold E. Kohn, Dianne M. Nast, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for Bodines, Inc., and Cumberland Farms Dairy, Inc.

Morton M. Maneker, Proskauer, Rose, Goetz & Mendelsohn, New York City, for A.E. Staley Mfg. Co.

Michael H. King, Ross & Hardies, Chicago, Ill., for Consolidated Packaging Corp.

Warren Rubin, Gross & Sklar, P.C., Philadelphia, Pa., for Marstan Industries, Inc.

Stanley D. Robinson, Kaye, Scholer, Fierman, Hays & Handler, New York City, for Nabisco, Inc.

Guido Saveri, Saveri & Saveri, San Francisco, Cal., for Kalva Corp. & Virnelson Bakery, Inc.

William M. Dallas, Jr., Sullivan & Cromwell, New York City, for Amstar Corp.

John P. Ryan, Jr., Robert C. Schnitz, McBride & Baker, Chicago, Ill., for Grain Processing Corp.

Robert A. Skirnick, Wolf, Popper, Ross, Wolf & Jones, New York City, for Eastern Candy Co., Korbro Oil, and Plantation Confection Co., Inc.

Barbara A. Mentz, Hall, McNicol, Hamilton & Clark, New York City, for American Maize-Products Co.

Keith E. Pugh, Jr., Edward P. Henneberry, Howry & Simon, Washington, D.C., for Hubinger Co.

Terrence C. Sheehy, Peter E. Moll, Howry & Simon, Washington, D.C., for Anheuser-Busch, Inc.

Joseph Barbash, Michael E. Wiles, Debevoise & Plimpton, New York City, for National Starch & Chemical Corp.

John L. McGoldrick, McCarter & English, Newark, N.J., for Tropical Preserving Co., Inc.

Jeremiah F. Hallisey, O'Brien & Hallisey, P.C., San Francisco, Cal., for Sanitary Bakery.

Perry Goldberg, Specks & Goldberg, Ltd., Chicago, Ill., for Superior Beverage Co.

James R. Irwin, Steven W. Berman, Shidler, McBroom & Gates, Seattle, Wash., for Penick & Ford Ltd.

Sheldon O. Collen, Friedman & Koven, Chicago, Ill., for Federal Bake Shops, Inc.

William A. Garrigle, Garrigle, Chierici & Palm, Cherry Hill, N.J., for Bodines, Inc. & Cumberland Farms Dairy, Inc.

Richard D. Catenacci, Connell, Foley & Geiser, Newark, N.J., liason counsel, for appellees.

Lawrence A. Whipple, Jr., Whipple, Ross & Hirsh, Newark, N.J., for White Oak Ice Cream, Inc. & Oak Point Dairies of New Jersey.

Eugene M. Warlich, Doherty, Rumble & Butler, P.A., St. Paul, Minn., for Land O'Lakes, Inc.

Paul J. Linker, Robinson, Wayne, Levin, Riccio & LaSala, Newark, N.J., for United A.G. Cooperative, Inc.

Burton H. Brody, Standard Brands Inc., New York City, for Standard Brands Inc.

Norman R. Carpenter, Faegre & Benson, Minneapolis, Minn., for Archer Daniels Midland Co.

Robert H. Weir, Robert H. Weir, A.P.C., San Jose, Cal., for Keystone Co.

Mario N. Alioto, Alioto & Alioto, San Francisco, Cal., for Falstaff Brewing Corp.

Jack L. Block, Sachnoff, Weaver & Rubenstein, Chicago, Ill., for Health Care Industries.

Seymour Kurland, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Finkelstein Farms, Inc.

Allen S. Joslyn, Denis McInerney, Cahill, Gordon & Reindel, New York City, for CPC Intern., Inc.

Albert G. Besser, Hannoch, Weisman, Stern, Berkowitz & Kinney, Newark, N.J., for Grain Processing Corp.

Before SEITZ and ADAMS, Circuit Judges, and LATCHUM, Senior District Judge.*

## OPINION OF THE COURT

SEITZ, Circuit Judge.

### I.

A group of attorneys representing certain members of the plaintiff class,[1] who are consumers of corn derivative products, move for the disqualification of Cochrane & Bresnahan as attorneys for the appellant Pan-O-Gold Baking Company. This motion was made during the pendency of this appeal challenging a order of the district court approving the settlement of the class action.

### II.  FACTS

The parties tacitly agree that this court should decide this motion on the present record. The pertinent facts are not in dispute. The St. Paul, Minnesota, law firm of Cochrane & Bresnahan ("C & B") was privately retained by the Pan-O-Gold Baking Company, Inc. ("Pan-O-Gold") and Land O'Lakes, Inc. ("Land O'Lakes") to file separate antitrust complaints against the major producers of corn derivative products. Several other actions were brought throughout the country, and all the actions were consolidated by the Multidistrict Litigation Panel into the present action in the district court in New Jersey. C & B continued to represent both Pan-O-Gold and Land

---

* The Honorable James L. Latchum, Senior United States District Judge for the District of Delaware, sitting by designation.

1. The attorneys purport to speak for the plaintiff class. In view of our resolution of the standing issue, it is unnecessary to decide whether these attorneys in fact speak for the whole class.

O'Lakes, who were named plaintiffs, as well as a plaintiff class member, General Mills, in this litigation.

After consolidation, a partner of C & B, John Cochrane, was named by the district court to be a member of the plaintiffs' steering committee, the group of attorneys that guided the litigation of this matter.

Before this action reached trial, a settlement was negotiated. Prior to the hearing by the district court on the fairness of the settlement, John Cochrane filed a written objection to the settlement on behalf of Pan-O-Gold and Land O'Lakes. Later, on July 30, 1983, Cochrane was informed by an attorney for Land O'Lakes and General Mills that those companies had decided to accept the settlement if it were approved by the district court.

On September 7, 1983, the district court approved the settlement. On October 4, 1983, John E. Koerner & Company, Imperial Products Corporation and Pan-O-Gold, filed a notice of appeal. C & B mailed to the district court a notice of withdrawal as counsel of record for Land O'Lakes on October 18, 1983.[2] On this appeal, C & B does not purport to represent anyone other than Pan-O-Gold.

The movants then filed this motion to disqualify C & B as attorneys for Pan-O-Gold before this court on the ground that C & B's continued representation of Pan-O-Gold would violate the controlling standards of professional conduct.[3]

### III. DISCUSSION

#### A. A DISQUALIFICATION MOTION BEFORE THE COURT OF APPEALS

■ This disqualification issue was not raised in the district court. We believe, however, that this motion is properly before us. One of the inherent powers of any federal court is the admission and discipline of attorneys practicing before it. *See Matter of Abrams,* 521 F.2d 1094, 1099 (3d

Cir.), *cert. den.,* 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975) (each court may create independent standards and rules for the admission and discipline of attorneys before it); *Ramos Colon v. United States Attorney,* 576 F.2d 1, 3 (1st Cir.1978). *See also* Fed.R.App.P. 46(C) (granting courts of appeals broad powers to discipline attorneys).

To resolve this motion, we must determine the governing standard for professional conduct before this court. Our court of appeals has never formally adopted any particular formulation of the standards of professional conduct. The lack of formal standards, however, cannot mean that the attorneys appearing before us do not have ethical obligations and duties. *See United States v. DeFalco,* 644 F.2d 132 (3d Cir. 1979) (en banc) (duty of professional conduct required before the court of appeals). Also, while the exact contours of that duty have not been stated, the vast majority of the courts in this country have adopted, with slight variation, the Code of Professional Responsibility promulgated by the American Bar Association, and thus, the basic principles of an attorney's duties and responsibilities are clear and easily applied. Further, since each of the attorneys in C & B are bound by the duties imposed by the bars of their respective states, they have notice of the common principles against conflicts of interests imbedded in the national standards of current practice.

■ We believe that the appropriate guidance for finding the current national standards of ethical norms lies in the standards promulgated by the American Bar Association. *Cf. Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) (looking to ABA standards in determining prevailing norms of practice for sixth amendment claim). Accordingly, we will apply the principles and rules set forth in the ABA Model Code of Professional Responsibility, and in the re-

---

**2.** C & B states that it also withdrew as counsel to General Mills.

**3.** The status of Mr. Cochrane as a member of the steering committee is not questioned before this court.

cently approved Model Rules of Profession-. al Conduct.

## B. STANDING

The movants, purporting to speak for the plaintiff class, claim that C & B breached its duty of professional responsibility by taking a position on appeal for Pan-O-Gold adverse to that of Land O'Lakes in litigation in which C & B had previously represented both parties.

■ C & B contends that the plaintiff class, as an entity, lacks standing to challenge the alleged breach of duty to Land O'Lakes. They argue that the correlative right to C & B's duty belongs only to the former client, Land O'Lakes. *See In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 88–89 (5th Cir.1976) (requiring disqualification motion to come from former client). *But see Kevlik v. Goldstein,* 724 F.2d 844 (1st Cir.1984) (disqualification motion may be made by any opposing attorney under his duty to report disciplinary violations). Assuming without deciding that a motion to disqualify must be brought by a former client, we believe that the requirement is satisfied because the present record discloses that Land O'Lakes, through their current attorneys, joined this motion to disqualify C & B. We, therefore, consider this motion as brought by Land O'Lakes.

Further, because there is a conflict between the positions of two clients who had individually and privately retained C & B, we may consider this case solely in the context of a conflict of interest between the attorney and those clients. We consider this to be a case where two clients retained the same law firm to file suit, and where, later, that law firm chose to represent one of those clients against the other in the course of the same litigation. In view of our evaluation of the situation, we emphasize that it is unnecessary to address the considerable ethical problems that might arise between an attorney named by the court to represent the class and members of the class, or the general problems that might arise when some members of a class favor a settlement and others do not. *Cf. Developments, Conflicts of Interest in the Legal Profession,* 94 Harv.L.Rev. 1247, 1447–57 (1981) (discussing theories of representation by class action attorneys).

## C. THE DUTIES OWED BY C & B

■ C & B was retained by Land O'Lakes in this litigation and owed their client a duty of loyalty. In addition, the attorneys of C & B, as members of the bar, owe a general duty to maintain public confidence in the integrity of the bar. *In re Eastern Sugar Antitrust Litigation,* 697 F.2d 524, 530 (3d Cir.1982). Under the ABA Code, these standards are reflected in Canons 5 and 9.

■ C & B owed Land O'Lakes a duty of vigorous advocacy. C & B contends, however, that while it may have owed Land O'Lakes that duty, it no longer owes them a duty of loyalty because C & B withdrew as counsel for Land O'Lakes. The duty of loyalty does not always detach when the representation ends. A client has an expectation that the attorney will diligently pursue his goals until the matter is completely resolved, absent an effective waiver. In litigation, an attorney may not abandon his client and take a adverse position in the same case. This is not merely a matter of revealing or using the client's confidences and secrets, but of a duty of continuing loyalty to the client.

■ Under the ABA Code, there was no express prohibition against representation of interests adverse to former clients, although this court has used Canon 9, "the appearance of impropriety," to imply such a duty. *See e.g., Richardson v. Hamilton International Corp.,* 469 F.2d 1382, 1385–86 (3d Cir.1972), *cert. den.,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973). Under the ABA Model Rules, this duty is clearly stated in Rule 1.9:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or substantially related matter in which that person's interests are materially ad-

verse to the interests of the former client unless the former client consents after consultation.

ABA Model Rules of Professional Conduct, Rule 1.9. A rule against representation of interests adverse to a former client in the same or substantially related litigation has several purposes. It is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him. Without such a rule, clients may be reluctant to confide completely in their attorneys. Second, the rule is important for the maintenance of public confidence in the integrity of the bar. *See Richardson, supra.* Finally, and importantly, a client has a right to expect the loyalty of his attorney in the matter for which he is retained.

■ We recognize that in some cases there may be relevant countervailing considerations. This court has often employed a balancing test in determining the appropriateness of the disqualification of an attorney. *See e.g. United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980). In determining the relevant considerations, we once again note that in this appeal C & B does not purport to represent the class. Therefore, a disqualification of C & B for this appeal would not require evaluation of the prejudice to the class. With respect to Pan-O-Gold and Land O'Lakes, C & B represented both of these clients for several years in this complex antitrust litigation. Balanced against Land O'Lakes' interests in the loyalty of its attorney are the interests of Pan-O-Gold in retaining its chosen counsel who has extensive familiarity with the factual and legal issues involved, and in avoiding the time and expense required to adequately familiarize a new attorney with the matter.

While disqualification would serve to increase the costs of litigation for Pan-O-Gold, it would be unfair, appearances apart, to permit C & B to use against its

former client the information about the strengths and weaknesses of the case gained from the joint representation. Under these circumstances, C & B must be disqualified.

## D. CONSENT BY THE FORMER CLIENT

■ C & B contends that it is still proper for it to represent Pan-O-Gold because Land O'Lakes consented to the continued representation by C & B. However, the burden of showing consent is on C & B, *IBM v. Levin,* 579 F.2d 271, 282 (3d Cir. 1978), and there is no indication in any of the papers or affidavits submitted that Land O'Lakes consented to C & B's continued representation of Pan-O-Gold during this appeal.[4] Further we note that this disqualification motion was brought, *inter alia,* by Land O'Lakes' attorney and we must infer that Land O'Lakes wishes C & B to be disqualified. Because we do not find consent, we do not reach the issue of whether there may be some circumstances where even the consent by the former client will not immunize an attorney against a disqualification based upon the appearance of impropriety and the maintenance of the integrity of the bar. *See ABA/BNA Lawyers' Manual on Professional Conduct* 51:207 (1984).

## IV.

The motion to disqualify Cochrane & Bresnahan as counsel to Pan-O-Gold before this court will be granted.

ADAMS, Circuit Judge, concurring.

### I

I agree with the result reached in this case, as well as with the majority's exposition of the principles which generally govern conflicts of interest in the traditional

---

**4.** Cochrane stated at oral argument that Land O'Lakes gave its consent to C & B's continued representation of Pan-O-Gold. However, he made no representations to that effect in his affidavit or reply to the motion. Neither can we find any indication of consent in the district court record. Under these circumstances, we do not believe a question of fact has been raised.

lawyer-client setting. I write separately to caution that those general principles must be applied in a carefully considered fashion to contexts other than those in which they arose.

Perhaps no area of the law provokes as much litigation concerning ethical issues as class actions. *See* Waid, *Ethical Problems of the Class Action Practitioner: Continued Neglect by the Drafters of the Proposed Model Rules of Professional Conduct,* 27 Loy.L.Rev. 1047, 1047 (1981). Moreover, the Code of Professional Responsibility, Model Rules of Professional Conduct, as well as bar association opinions provide little guidance to the class action practitioner. *See id.* at 1048–49; *Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 Harv.L.Rev. 1247, 1448 (1981). Courts confronting an ethical problem in the class action setting must focus on two points. First, courts cannot mechanically transpose to class actions the rules developed in the traditional lawyer-client setting context; and second, a resolution of such issues would appear to call for a balancing process that in most cases should be undertaken initially by the district court.

## II

The general rules described by the majority regarding the duties of loyalty and confidentiality were developed for and arose out of the traditional lawyer-client ambience in which the roles of the attorney and the client are well defined. The Code of Professional Responsibility, for example, envisions the attorney primarily as an advocate of the interests of one client. In such a setting it is usually possible to foresee the exact nature of any conflict of interest problem that might arise out of multiple or successive representations. Generally, a lawyer can, with little adverse impact on a prospective client, guard against such situations by declining a representation.

Courts and commentators have noted that this traditional model cannot be carried over unmodified to the class action arena, since no clear allocation of decision-making responsibility has emerged between the attorney and class members. *See Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157, 1176 (5th Cir.1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979); *Developments in the Law—Class Actions,* 89 Harv.L.Rev. 1318, at 1578 (1976). The obligation of counsel representing a class runs to the class as a whole, although as a general matter class counsel may have worked closely only with the named parties. *See Greenfield v. Villager Industries, Inc.,* 483 F.2d 824, 832 (3d Cir.1973); Rhode, *Class Conflicts in Class Actions,* 34 Stan.L.Rev. 1183, 1203 (1981); *Conflicts of Interest,* 94 Harv.L. Rev. at 1451. Having all been affected similarly, class members generally know the initial objective of the class suit and accept the broad goals of the action. Despite the fact that class members are in some sense similarly situated, however, conflicting interests among the many individuals represented by a single attorney in a class action are frequently inevitable at some point during the litigation. *Conflicts of Interest,* 94 Harv.L.Rev. at 1447; *Class Actions,* 89 Harv.L.Rev. at 1594. "Representative suits carry with them an accepted structural risk that conflicts may arise between groups of class members." *Mendoza v. United States,* 623 F.2d 1338, 1344 (9th Cir.1980), *cert. denied sub nom., Sanchez v. Tuscon Unified School Dist. No. 1,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981).

This conflict most often, but not always, occurs over questions of relief. *See* J. Chambers, *Class Action Litigation: Representing Divergent Interests of Class Members,* 4 U. Dayton L.Rev. 353, 356 (1979). For example, the case at hand involves objections to a proposed settlement, a rather common occurrence in that class actions many times are settled prior to or shortly after class certification. *See Class Actions,* 89 Harv.L.Rev. at 1536. When absent class members disagree with named plaintiffs regarding the adequacy of a settlement, class counsel will more often than

not side with the named parties. *Id.* at 1593. Absent class members who challenge a settlement thus may encounter as an adversary the class counsel, who represented them and arguably owes them a continuing duty of loyalty. Yet many commentators have noted that class counsel regularly defend the settlement against objectors, and even file appeals from district courts' disapprovals of settlements. *E.g.,* 2 H. Newberg, *Newberg on Class Actions* § 2710 (1977). Others have argued that the attorney "ought to have the opportunity to represent the position of that side of the split class which he or she supports." Chambers, 4 U. of Dayton L.Rev. at 357.

Under a strict application of the ethical rules, however, whenever class members disagree about the propriety of a settlement, an attorney representing discordant class members would be required to withdraw completely from the litigation. In such a case, an attorney's withdrawal would seemingly be automatic, regardless of which side the attorney agrees with. *See also* Waid, 27 Loy.L.Rev. at 1062; *Class Actions,* 89 Harv.L.Rev. at 1593 (both reading Code same way). Although this may promote the salutary ends of confidentiality and loyalty, it would have a serious adverse effect on class actions. Treating the relations between counsel and named and absent class members as identical to an attorney's relationship with individual clients outside the class action context would cause courts to find a conflict of interest in many class actions and to call for the typical remedial responses, such as disqualification.

Class action litigation frequently promotes and protects the legal interests of those whose rights might not be protected at all without the class action device. Any approach resembling a per se disqualification of an attorney who represents multiple parties in a class, or the entire class, when any member disagrees, might well undermine the attractiveness and utility of the class action device by discouraging multiple representation.

If a class attorney is automatically prevented from continuing to represent the named parties or a majority of a class which supports a settlement, the minority dissenting class members might obtain considerable leverage in the litigation by being able to force the majority to seek new counsel. Similar problems arise if counsel is not permitted to side with the objectors. In many types of class actions, when notice of settlement is given to the class, no single individual may have a sufficient stake in the outcome of the litigation to warrant the expense of organizing opposition to the proposed settlement and obtaining separate representation. Rhode, 34 Stan.L.Rev. at 1215. In less celebrated cases and in those in which the availability of a statutory attorney's fee is uncertain, it often will not be possible for dissenters to attract qualified counsel. *See generally* Handler, *The Public Interest Activities of Private Practice Lawyers,* 61 A.B.A.J. 1388 (1975). Thus, a rule requiring automatic disqualification may well penalize dissent, and thereby deprive the court of the important assistance which objecting class members render by challenging the fairness of a class action settlement. *Class Actions,* 89 Harv.L.Rev. at 1566–67.

### III

As section C of the majority opinion suggests, the appropriate process would appear to be one of balancing. The costs to litigants and the class action device should be weighed carefully against the need to enforce the lawyer's duties of loyalty and confidentiality. The duty of loyalty to a client has been embodied in the Code through a prohibition of *any* appearance of impropriety. "Public confidence in the integrity of legal institutions serves as an over-arching consideration beneath which attorneys practice their profession. The semblance of unethical behavior by practitioners may well be as damaging to the public image as improper conduct itself." *Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corp.,* 518 F.2d 751, 759 (2d Cir.1975) (Adams, J., concurring).

Yet the duty owed in a class action is in some ways unique and cannot be equated with that in the traditional lawyer-client

setting. The inherent risks in a class action are "accepted structural" facts, known to those who choose to participate in a class. Moreover, the legal system has responded to this risk with an array of carefully calibrated safeguards. *See generally* Fiss, *The Forms of Justice*, 93 Harv.L.Rev. 1 (1979) (distinguishing class action "structural reform" litigation from traditional "dispute resolution" model). Courts have affirmed the special responsibility placed upon the trial judge to protect the rights of class members. *Mendoza*, 623 F.2d at 1344; *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). In addition, the Federal Rules of Civil Procedure impose strict procedural requirements on the conduct of class actions. *See* Fed.R.Civ.P. 23. Of special significance is the trial court's role in the supervision and approval of class settlements, based on the criterion of fairness. The attorney's duty to the class requires him or her to make known to the court any conflicts in order that the court may take appropriate steps to protect the interests of all class members. *Pettway*, 576 F.2d at 1176.

Taken together these realities of class action practice suggest that the mere appearance of impropriety when a lawyer attacks or defends a class settlement against the interest of a formerly represented class member may well be insufficient in itself to be the basis for an *automatic* disqualification.[1]

Similarly, although the importance of maintaining client confidences cannot be minimized, a rigid "prophylactic rule" in the area of client confidentiality in class actions would appear to be inappropriate. *Cf.* Note, *The Attorney-Client Privilege in Class Actions: Fashioning an Exception to Promote Adequacy of Representation*, 97 Harv.L.Rev. 947 (1984) (confidentiality should give way when it impedes basic representational aspects of a class action). Instead in a class action context in which disqualification potentially threatens the viability of the representational suit, the court should require some showing by the party urging disqualification. Relevant considerations include the amount and nature of the information that has been proffered to the attorney, its availability elsewhere, its importance to the question at issue, such as settlement, as well as actual prejudice that may flow from that information. *Cf. Silver Chrysler*, 518 F.2d at 759 (Adams, J., concurring) (suggesting, because of countervailing factors, a showing of knowledge of confidential and *pertinent* information).[2] In camera review of the information might be in order in some cases to safeguard the class members from the harm caused by disclosure in open court. *See* Note, 97 Harv.L.Rev. at 960. These factors should then be balanced against the costs to the opposing party, and the possibility of securing new counsel. Such costs will likely be affected by the point in the litigation at which the conflict develops; the burden is perhaps less at earlier stages.

## IV

The disqualification motion at issue in the present appeal was first raised before

---

1. Moreover, although considerable knowledge and experience might have been gained by the attorney in the early stages of a case, such information need not in and of itself jeopardize or unfairly unbalance the case of the class members the attorney does not side with. The opposing clients as members of the original suit might enjoy the advantage of having gained important information with which to wage their opposition. Chambers, 4 U. of Dayton L.Rev. at 357.

2. In the criminal context society arguably has a greater interest in preventing conflicts of interest; furthermore, the right to effective assistance of counsel is guaranteed by the Sixth Amendment. The Supreme Court has held that a defendant who objects before trial to multiple representation by counsel must show that the potential conflicts impermissibly imperil his right to a fair trial. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). A defendant who raises no objection at trial must demonstrate that a conflict of interest actually affected the adequacy of representation, although the Court does not require of "nice calculations as to the amount of prejudice" attributable to the conflict. *Id.* at 349, 100 S.Ct. at 1719; *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942).

this Court. As the majority notes, this motion is properly before us; a federal court has inherent powers over the discipline of attorneys practicing before it. In an appropriate case, of course, the appellate court may resolve such an issue in the first instance. In some proceedings, the foregoing analysis would suggest a remand to the district court, which is in a more advantageous position to balance the factors involved than is an appellate court lacking factfinding resources. Alternatively, the appellate court might appoint a special master.

Nevertheless, I cannot say that the motion to disqualify the firm of Cochrane and Bresnahan has been improvidently granted. Sufficient evidence is extant in the present record to permit a proper balancing process as outlined above. Some of the important factors weighing towards disqualification are that the firm represented only three class members, not the entire class or a large portion of it; that a large amount is at stake for each litigant; and that the party potentially forced to proceed without chosen counsel is a large corporation with ample resources to enable it to secure new counsel.