

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-2-1999

# Lazy Oil Co v. Witco Corp

Precedential or Non-Precedential:

Docket 98-3067

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Lazy Oil Co v. Witco Corp" (1999). *1999 Decisions.* Paper 27.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/27

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 2, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-3067

LAZY OIL CO.; JOHN B. ANDREASSI; THOMAS A.
MILLER OIL COMPANY, on behalf of themselves and all
others similarly situated; CARL B. BROWN, Proprietor;
CARL B. BROWN OIL; WACO OIL & GAS COMPANY;
GASSEARCH CORPORATION; INTERSTATE DRILLING,
INC.; ALAMCO, INC.; R. H. ADKINS COMPANIES;
WYNNEWOOD DRILLING ASSOCIATES

v.

WITCO CORPORATION; QUAKER STATE CORPORATION;
QUAKER STATE OIL REFINING CORPORATION;

PENNZOIL COMPANY; PENNZOIL PRODUCTS COMPANY

      LAZY OIL CO.; JOHN B. ANDREASSI;
      THOMAS A. MILLER OIL CO.,
      Appellants

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 94-cv-00110E)
District Judge: Honorable Sean J. McLaughlin

Argued: December 11, 1998

Before: BECKER, Chief Judge, STAPLETON, Circuit Judges
and HARRIS, District Judge.*

(Filed: February 2, 1999)
_____

*Honorable Stanley S. Harris, United States District Judge for the
District of Columbia, sitting by designation.

JOSEPH E. ALTOMARE, ESQUIRE
(ARGUED)
P.O. Box 373
228 East Central Avenue
Titusville, PA 16354

Counsel for Appellants

GEORGE A. PATTERSON, III,
 ESQUIRE
BRIAN A. GLASSER, ESQUIRE
Bowles, Rice, McDavid, Graff & Love,
PLLC
P.O. Box 1386
600 Quarrier Street
Charleston, WV 25325-1386

Counsel for Appellees Waco Oil &
Gas Co., Interstate Drilling, Inc.,
Alamco, Inc., R.H. Adkins Companies,
Gassearch Corporation

ARTHUR M. KAPLAN, ESQUIRE
Fine, Kaplan & Black
Suite 2300
1845 Walnut Street, 23rd Floor
Philadelphia, PA 19103

HOWARD J. SEDRAN, ESQUIRE
(ARGUED)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

SAMUEL D. HEINS, ESQUIRE
DANIEL E. GUSTAFSON, ESQUIRE
Heins, Mills & Olson, P.L.C.
700 Northstar East
608 Second Avenue South
Minneapolis, MN 55402

ROBERTA D. LIEBENBERG,
 ESQUIRE
Liebenberg & White
The Pavillion, Suite 801
261 Old York Road
Jenkintown, PA 19046

Counsel for Appellee Wynnewood
Drilling, Plaintiff Class

RONALD S. ROLFE, ESQUIRE
(ARGUED)
Cravath, Swaine & Moore
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

DAVID L. McCLENAHAN, ESQUIRE
Kirkpatrick & Lockhart, LLP
1500 Oliver Building
Pittsburgh, PA 15222-2312

Counsel for Appellee Witco Corp.

RUFUS W. OLIVER, III, ESQUIRE
G. IRVIN TERRELL, ESQUIRE
(ARGUED)
Baker & Botts, L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995

WILLIAM M. WYCOFF, ESQUIRE
Thorp, Reed & Armstrong
One Riverfront Center
Pittsburgh, PA 15222

Counsel for Appellees Pennzoil
Company and Pennzoil Products
Company

3

OPINION OF THE COURT

BECKER, Chief Judge.

This is an appeal from an order of the District Court approving a class action settlement of an antitrust case. Ironically, the lead objector, Lazy Oil Co., is also the lead plaintiff, whose principal, Bennie G. Landers, conceived the suit but later became disaffected with its management and direction and ultimately with its fruits--the settlement. All the objectors are producers of Penn Grade Crude Oil, i.e., crude oil drawn from the western side of the Appalachian Basin within the states of New York, Pennsylvania, Ohio, and West Virginia.[1] The objectors contend that the settlement is not fair, at least to the producer plaintiffs in contrast to the investor plaintiffs. The objectors distinguish between these two types of class members in making their objections to the settlement, alleging that producer plaintiffs, as full-time oil-producing enterprises, have distinct interests and, particularly, unique losses, as compared to investor plaintiffs, who simply invest funds in oil-producing businesses.

The objectors maintain that producer plaintiffs lost not only revenues from the lower prices paid for their oil (a loss they share with investor plaintiffs), but also suffered the compounded losses from their inability to invest these lost funds in drilling new oil wells or upgrading their existing ones--losses allegedly not applicable to investor plaintiffs. This alleged distinction is also at the heart of the other two issues raised by objectors in this appeal. They contend that the District Court erred in not certifying a subclass of producer plaintiffs to ensure that their unique interests were adequately represented. Finally, they contend that the Class Counsel--originally hired to bring this suit by the lead plaintiffs, who are now objectors--should have been disqualified from representing the remaining class representatives and the entire class once the objectors chose to attack the settlement.

_____

1. Titusville, Pennsylvania, home of objectors' counsel, is the situs of the
Drake Oil Well, the first oil-producing well in the world--drilled in 1859.

4

The District Court conducted three days of hearings regarding, inter alia, the objectors' claims that the settlement was not fair, that a subclass of producer plaintiffs should be certified, and that Class Counsel should be disqualified from representing the class. On December 31, 1997, the District Court filed an omnibus order overruling objections to the settlement, approving the terms of the settlement, denying objectors' motion to remove or disqualify Class Counsel, denying objectors' motion for certification of a subclass, and denying approval of the plan for allocating the settlement proceeds.

From the objectors' point of view, our opinion should be devoted largely to a merits analysis of their objections to the settlement, measured by the standards outlined in Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975). However, we dispose of that aspect of the case summarily, concluding that the Girsh factors are easily met and that the District Court did not abuse its discretion in approving the settlement. Neither do we have difficulty with the District Court's order refusing to remove or disqualify Class Counsel, which we also affirm. We do, however, expound on this point to clarify the standard for adjudicating such claims in the class action context. More specifically, drawing on the concurring opinion in In re Corn Derivatives Antitrust Litigation, 748 F.2d 157, 162 (3d Cir. 1984) (Adams, J., concurring), we adopt a balancing approach to motions to remove or disqualify class counsel on conflict-of-interest grounds once former class representatives, i.e., former clients of class counsel, become objectors and therefore adversaries to class counsel's remaining clients.

One other point requires discussion--our appellate jurisdiction. The District Court, in its December 31, 1997, order from which this appeal was taken, did not dispose of all outstanding issues related to the settlement (i.e., it denied a motion to approve the allocation plan that was part of the settlement). Therefore, we must determine whether the rule of Cape May Greene, Inc. v. Warren, 698 F.2d 179 (3d Cir. 1983), that in certain circumstances a premature appeal may ripen once collateral issues are disposed of by the district court, confers on us appellate jurisdiction because an allocation plan has since been

5

approved by the District Court. We decide that Cape May Greene is both intact and applicable, and that we therefore have jurisdiction to hear this appeal from the order of the District Court, which we, in all respects, affirm.

I. Background

The subject of this appeal began as two separate class actions, each brought in the District Court for the Western District of Pennsylvania, by sellers of Penn Grade crude against three purchasers and refiners of this crude, Quaker State, Pennzoil, and Witco. The plaintiffs in both actions alleged that the defendants conspired to depress the price of Penn Grade Crude, in violation of the Sherman Antitrust Act. The cases were consolidated and, in June 1995, the District Court certified the consolidated case as a class action under Rule 23(b)(3), with the class comprising all "direct sellers of Penn Grade Crude" who sold oil to the defendants between January 1, 1981, and June 30, 1995. Shortly thereafter, the plaintiffs settled with Quaker State for $4.4 million. This settlement was approved by the District Court, and no issues relating to it are before us.

In early 1997, after several months of negotiations, plaintiffs reached a settlement with the remaining defendants, under which Pennzoil would pay approximately $9.7 million and Witco would pay approximately $4.8 million, with neither defendant admitting any liability or wrongdoing. Upon presentation of the settlement to the class representatives, two of them, Lazy Oil Co. and Thomas A. Miller Oil Co., objected to the settlement.[2] At least 384 class members joined Lazy Oil et al. in objecting to the terms of the settlement after receiving notice of its terms.[3] Class Counsel thereafter moved to withdraw from representing the objectors.

---

2. A third class representative, John B. Andreassi, later joined Lazy Oil and Thomas A. Miller in objecting to the proposed settlement. Andreassi informed Class Counsel of his objections shortly after the settlement notices had been sent to class members.

3. Other groups of class members objected as well, but did not appeal from the District Court's orders approving the settlement or the allocation of the proceeds. Therefore, only the objections of the Lazy Oil group are before us, and it is to that group we refer when using the term "objectors."

In February 1997, the District Court directed that notice of the proposed settlement be sent to all class members and published in local and national newspapers. The objectors filed motions, inter alia, requesting that the Court disapprove the settlement, for establishment of a producer subclass, and for disqualification of Class Counsel. As noted above, the District Court conducted three days of evidentiary hearings in April and May 1997. On December 31, 1997, the Court approved the settlement and denied the objectors' motions. With extensive findings of fact, the Court found that plaintiffs faced substantial obstacles to proving that defendants had violated the antitrust laws, as well as serious problems with their theory of damages. The Court also found that the notice to class members had been adequate, and that relatively few class members objected to the settlement. After evaluating these and the other Girsh factors, it concluded that the settlement was fair and reasonable, and that the objectors' primary concern, i.e., that producer plaintiffs were not adequately represented or compensated by the settlement, was based on a speculative and unsupported argument (that had been raised very late in the litigation). Therefore, it overruled all of the relevant objections and approved the settlement. This appeal followed.

II. Appellate Jurisdiction

As noted above, we must first address the matter of our appellate jurisdiction, which is, of course, limited to those cases for which Congress has provided. In general, we may only hear appeals from final judgments and from certain prescribed interlocutory orders of the district courts. See 28 U.S.C. SS 1291–1292; Behrens v. Pelletier , 516 U.S. 299, 305 (1996) ("The requirement of finality precludes consideration of decisions that are subject to revision, and even of fully consummated decisions that are but steps towards final judgment in which they will merge." (internal quotations and brackets omitted)). In this case, the District Court filed its order approving the settlement and denying the objectors' motions, on December 31, 1997, but in that same order, denied a motion to approve an allocation plan for the settlement proceeds. The objectors filed a notice of

appeal within 30 days of this order, on January 29, 1998. See Fed. R. App. P. 4(a)(1). Following further negotiations pursuant to an order of the District Court, the parties submitted a revised allocation plan, which was approved on April 13, 1998, more than two months after the notice of appeal had been filed. Final judgment was then entered and the case closed.

While none of the parties (plaintiffs, defendants, or objectors) contests our jurisdiction to hear this appeal, we have an inherent obligation to ensure that we only decide those cases for which there is a proper ground for appellate jurisdiction. See Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225, 229 (3d Cir. 1998). The question we have raised sua sponte and which we must answer is whether a notice of appeal, filed within 30 days after a district court's order approving a class action settlement but before the court enters a final judgment approving all aspects (including the allocation) of the settlement, ripens upon the district court's entry of final judgment or is premature and void.

Our leading case in this area is Cape May Greene, Inc. v. Warren, 698 F.2d 179 (3d Cir. 1983). In Cape May Greene, we held that a premature notice of appeal, filed after disposition of some of the claims before a district court, but before entry of final judgment, will ripen upon the court's disposal of the remaining claims. See id. at 184-85. In that case, the defendants had filed a cross-claim that was not actually litigated either before or after the entry of the order from which the appeal was taken. When the district court entered an order dismissing this claim--after the notice of appeal had been filed--we held that appellate jurisdiction existed, as the appellee did not allege any prejudice and "we had [not yet] taken any action on the merits." Id. at 184. We believe that exercising jurisdiction in the present case, in which the District Court disposed of the remaining issue and entered a final judgment prior to our consideration of the case, and in which no prejudice is alleged by any party, is consistent with our decision in Cape May Greene. See also Welch v. Cadre Capital, 923 F.2d 989, 992 (2d Cir.) ("[A] premature notice of appeal from a nonfinal order may ripen into a valid notice of appeal if a final judgment has been entered by the time the appeal is heard and the

8

appellee suffers no prejudice."), vacated on other grounds
sub nom. Northwest Sav. Bank v. Welch, 501 U.S. 1247
(1991).

Some courts that have followed a rule similar to ours
have revisited this doctrine in light of the Supreme Court's
1991 decision in FirsTier Mortgage Co. v. Investors Mortgage
Insurance Co., 498 U.S. 269 (1991).4  In FirsTier, the
Supreme Court stated that Federal Rule of Appellate
Procedure 4(a)(2) "permits a notice of appeal from a
nonfinal decision to operate as a notice of appeal from the
final judgment only when a district court announces a
decision that would be appealable if immediately followed
by the entry of judgment." Id. at 276 (first emphasis added).5
Therefore, Rule 4(a)(2) does not support the Cape May
Greene doctrine when the order from which a notice of
appeal is filed is not one that would befinal if followed
immediately by entry of judgment.6 Relying on this

_____

4. We also acknowledge that some courts refused, even before FirsTier, to
adhere to a rule such as ours. See, e.g., United States v. Hansen, 795
F.2d 35, 37–38 (7th Cir. 1986) (discussing circuit split on the issue,
rejecting Cape May Greene rule, and noting that the appellants,
"anticipating defeat, might as well have filed the notice of appeal
simultaneously with the filing of their counterclaims or their answer to
the [plaintiff's] complaint"). In such cases, these courts of appeals
dismiss the premature appeal, presumably leaving the appellant either
without recourse to challenge the actual final order in the case or forced
to file its notice of appeal again, if a timely one can still be filed
after the
appeal is dismissed.

5. Rule 4(a)(2) provides that, "[a] notice of appeal filed after the court
announces a decision or order but before the entry of the judgment or
order is treated as filed on the date of and after the entry."

6. When asked by us to comment on the jurisdictional issue, the parties
argued that the order of December 31, 1997, was afinal order from
which an appeal could be taken under 28 U.S.C. S 1291, because (they
argued) the allocation issue was simply a separate, ministerial matter
over which the District Court retained jurisdiction after entering a final
order approving the settlement. See Polychrome Int'l Corp. v. Krigger, 5
F.3d 1522, 1544 n.52 (3d Cir. 1993) (holding that jurisdiction exists
when an "order sufficiently disposes of the factual and legal issues and
. . . any unresolved issues are sufficiently `ministerial' that there
would
be no likelihood of further appeal"). While we need not resolve this issue
in light of our invocation of the rule from Cape May Greene, we question

9

distinction, the Fifth Circuit has recently abrogated its own version of the Cape May Greene doctrine. See United States v. Cooper, 135 F.3d 960, 963 (5th Cir. 1998) ("FirsTier allows premature appeals only where there has been afinal decision, rendered without a formal judgment."). 7

We do not believe that Cape May Greene has been overruled by FirsTier. FirsTier simply limited the reach of Rule 4(a)(2)'s proviso. It did not hold that the Rule 4(a)(2) situation--announcement of a final decision followed by notice of appeal and then entry of the judgment--is the only situation in which a premature notice of appeal will ripen at a later date. In fact, Rule 4(a)(4) was amended in 1993

_____

whether the District Court's order approving the settlement was a "final order." See In re Chicken Antitrust Litig. , 669 F.2d 228, 235 (5th Cir. Unit
B 1982) ("As long as a matter such as [allocation of settlement proceeds] remains open, unfinished, or inconclusive, an order will not be considered final regardless of its characterization, and there may be no intrusion by appeal."); see also Hoots v. Pennsylvania, 587 F.2d 1340, 1346-48 & n.42 (3d Cir. 1978) (holding that an "order [that] expressly invited `any party to submit further plans or proposals and evidence in support thereof' " in a desegregation case was considered nonfinal and nonappealable); Fireman's Fund Ins. Co. v. Joseph J. Biafore, Inc., 526 F.2d 170, 173 (3d Cir. 1975) (holding that an order granting plaintiff's motion for summary judgment, with only the computation of interest remaining to be done, was not a final order).

The District Court, in its opinion and order, addressed the merits of the allocation plan and specifically refused to grant a motion to approve this aspect of the settlement. The plan that was eventually approved differed from that included in the settlement approved on December 31. Before this Court, the objectors in their brief specifically refer to (and criticize) "the allocation plan submitted by Class Counsel." Appellants' Br. at 30. Therefore, we question the characterization of this issue as simply "ministerial" and separate from the primary issues of liability and damages. As noted, however, we need not decide this question.

7. Cooper was actually a criminal case, in which Rule 4(b), the counterpart to Rule 4(a)(2), was involved. Yet, the court in Cooper noted that the language of the two provisions is "almost identical" and should "be given the same meaning." 135 F.3d at 962. We have likewise read these provisions consistently, and found jurisdiction when a premature notice of appeal is filed in certain criminal cases. See United States v. Hashagen, 816 F.2d 899, 906 (3d Cir. 1987) (en banc)."

to provide that a premature notice of appeal would later ripen if it was filed after entry of a judgment, but while post-trial motions were pending. Such a premature notice of appeal ripens upon "entry of the order disposing of the last such motion outstanding." Fed. R. App. P. 4(a)(4).8 Thus, in a number of factual situations, a premature notice of appeal will become effective at a later date.

Finally, Rule 2 of the Federal Rules of Appellate Procedure permits a court of appeals to "suspend the requirements or provisions" of any rule of appellate procedure. See Fed. R. App. P. 2. The purpose of the Rule is to ensure that justice is not denied on the basis of a mere technicality. See id. advisory committee's note ("The rule also contains a general authorization to the courts to relieve litigants of the consequences of default where manifest injustice would otherwise result."). For us to decline jurisdiction in this appeal would elevate a mere technicality above the important substantive issues here involved, as well as the right of the parties in this case to have their dispute resolved on its merits.9

In this case, a notice of appeal was filed following final disposition of the key elements of the dispute: liability and

_____

8. Prior to the amendment, the Rule had provided that "[a] notice of appeal filed before the disposition of any of the[post-trial] motions shall
have no effect." Fed. R. App. P. 4(a)(4) (1979). The Supreme Court had interpreted this provision as making such a notice of appeal a "nullity, . . . as if no notice of appeal were filed at all." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61 (1982). No similar provision of Rule 4 currently provides an explicit command that a notice of appeal filed under the circumstances here "shall have no effect." To the contrary, we find that our rule from Cape May Greene is fully consistent with the principles embodied in current Rules 4(a)(2) and 4(a)(4), which essentially hold a premature notice of appeal in abeyance until such time as it would be appropriately filed and effective.

9. We are, of course, mindful of the fact that the authority of Rule 2 cannot be utilized to expand the jurisdiction of the Court. See, e.g., Torres v. Oakland Scavenger Co., 487 U.S. 312, 315 (1988) (noting that Rule 2 authority does not permit "a court to`enlarge' the time limits for filing a notice of appeal"). Giving effect to a previously filed notice of appeal upon the district court's disposition of outstanding claims does not extend the time limits imposed on our jurisdiction.

11

the amount of damages. The appellees, both plaintiffs and defendants, were on notice that the objectors would be appealing the approval of the settlement and the denial of their motions by the District Court. No prejudice is claimed or apparent. Long before we considered any aspect of this case, the outstanding issue of allocation was resolved, a final judgment was entered, and the case was closed. Compare Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A., 947 F.2d 49, 54 n.5 (3d Cir. 1991) ("Arguably RTC's appeal, even if it was filed prematurely, ripened once the remaining claims in this case (the impediments tofinality) were settled and dismissed." (citing, inter alia, Cape May Greene and FirsTier)), with United States v. Davis, 924 F.2d 501 (3d Cir. 1991) (dismissing appeal when notice of appeal was filed prematurely and appellants' allegations of error remained before the district court). Finding our precedent in Cape May Greene both intact and applicable to this case, we hold that we have jurisdiction to hear this appeal.

III. Standard of Review

Our scope of review of a challenge to the district court approval of a class action settlement is limited. We will reverse a settlement approval only when the district court has committed a "clear abuse of discretion." In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 299 (3d Cir. 1998) (internal quotations omitted), cert. denied, No. 98–819, 1999 WL 16241 (U.S. Jan. 19, 1999), and cert. denied, No. 98–888, 1999 WL 16242 (U.S. Jan. 19, 1999). We review a district court's decision not to certify a subclass for abuse of discretion. See Pennsylvania Dental Ass'n v. Medical Serv. Ass'n, 745 F.2d 248, 255 (3d Cir. 1984). A district court's denial of a motion to disqualify counsel is also reviewed for abuse of discretion. See Kroungold v. Triester, 521 F.2d 763, 765 & n.2 (3d Cir. 1975). However, to the extent that the questions underlying the disqualification motion are purely legal (e.g., whether class counsel who represented objectors when the latter were class representatives can continue to represent the class), our review is plenary. See Kramer v. Scientific Control Corp., 534 F.2d 1085, 1088 (3d Cir. 1976).

12

IV. Settlement of the Class Action

The leading case establishing the requirements for evaluating a class action settlement is Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975). Here, the District Court appropriately analyzed the settlement under the nine Girsh factors, issuing a 113-page opinion with 74 pages of lucid factual findings and a thorough analysis of each aspect of the settlement and of the appellants' objections. Wefind the District Court's opinion to be persuasive and its factual findings to be fully supported by the record. They are certainly not clearly erroneous. The Court's work product easily meets the standard of In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768 (3d Cir. 1995): "In order for the determination that the settlement is fair, reasonable, and adequate to survive appellate review, the district court must show it has explored comprehensively all relevant factors." Id. at 805 (internal quotations omitted).

We note specifically that the plaintiffs faced a not insignificant risk of losing a summary judgment motion if this case was not settled; of the possible exclusion of their damages experts following a Daubert[10] hearing; and of an adverse verdict if the case reached trial.[11] We also note that the settlement followed over two years of extensive discovery, including more than eighty depositions, substantial document review, and the production of expert reports. We agree with the District Court that the stage of proceedings indicates that both sides were adequately informed of the strengths and weaknesses of the case, and strongly favors approval of the settlement. See Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1314 (3d Cir. 1993) ("[P]ost-discovery settlements are more likely to reflect the true value of the claim and be fair."). Given the risks of establishing liability and damages, the complexity of the

_____

10. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1993).

11. The objectors concede that there is no direct evidence of a price-fixing conspiracy, and that, therefore, they must present evidence both of conscious parallelism and of "plus factors" to make out a price-fixing case. They present only "three evidentiary artifacts" to meet the plus-factor requirement; all three are weak at best.

13

case, the stage of the proceedings, and the lack of substantial opposition to the settlement, we find no abuse of discretion in the District Court's approval of the settlement.

We likewise find no abuse of discretion in the District Court's denial of the objectors' motion for certification of a subclass. This issue arises from the objectors' claim that producer plaintiffs suffered distinct and greater damages than those endured by so-called investor plaintiffs. The District Court found that this purported distinction was unsupported by the facts of the case, was not relevant to the class claims (which were brought on behalf of"sellers," not producers or investors), and was raised at an extremely late point in the litigation. We agree.

V. Disqualification of Class Counsel

The objectors contend that Class Counsel should be disqualified because they are now representing a party (i.e., the plaintiffs) adverse to one they previously represented (i.e., the objectors), creating an impermissible conflict of interest. This contention raises an interesting threshold question as to the standard a district court should apply to the conflict determination.

The most extensive discussion of the conflict-of-interest issue within our jurisprudence is found in In re Corn Derivatives Antitrust Litigation, 748 F.2d 157 (3d Cir. 1984). In Corn Derivatives, we granted a motion to disqualify an attorney who had formerly represented several class representatives; some of the class representatives approved of a proposed settlement and others did not. Unlike the present case, in Corn Derivatives counsel had withdrawn from representing the parties approving of the settlement and sought only to represent one objector on appeal. After consulting the relevant portions of the ABA's Model Rules of Professional Conduct and Model Code of Professional Responsibility,12 we concluded that the prejudice to the

_____

12. Currently, the ABA's Model Rules of Professional Conduct provide that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially

14

former clients would be too great to justify counsel's continued representation of the objector. See id. at 162. We focused on the policies underlying the rules against an attorney representing a party in a matter in which a former client is now an adversary, including preventing "even the potential that a former client's confidences and secrets may be used against him"; maintaining "public confidence in the integrity of the bar"; and upholding the duty of loyalty that a client has the right to expect. Id.

Our opinion also discussed countervailing considerations, such as whether the counsel at issue represented the entire class (which was not the case in Corn Derivatives, but is true here), and the interest of the party who wishes to retain the counsel in avoiding increased costs and keeping "counsel who has extensive familiarity with the factual and legal issues involved." Id. Overall, however, we analyzed the situation no differently than we would have a non-class action case in which "two clients retained the same law firm to file suit, and where, later, that law firm chose to represent one of those clients against the other in the course of the same litigation." Id. at 161.

In his concurring opinion, Judge Adams more explicitly endorsed a balancing approach to attorney-disqualification motions in the class action context. Judge Adams argued that the rules for attorney disqualification could not be "mechanically transpose[d]" to the class action context and that the more appropriate means of addressing such issues was through "a balancing process." Id. at 163 (Adams, J., concurring). After discussing the rationale behind these points, he noted that, "[i]f a class attorney is automatically prevented from continuing to represent the named parties or a majority of a class which supports a settlement, the minority dissenting class members might obtain considerable leverage in the litigation by being able to force

_____

related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Model Rules of Professional Conduct Rule 1.9(a) (1983); see also id. cmt. ("The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.").

15

the majority to seek new counsel." Id. at 164 (Adams, J., concurring).

We agree with Judge Adams's concerns. In many class actions, one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class). If, by applying the usual rules on attorney-client relations, class counsel could easily be disqualified in these cases, not only would the objectors enjoy great "leverage," but many fair and reasonable settlements would be undermined by the need to find substitute counsel after months or even years of fruitful settlement negotiations. "Moreover, the conflict rules do not appear to be drafted with class action procedures in mind and may be at odds with the policies underlying the class action rules." Bruce A. Green, Conflicts of Interest in Litigation: The Judicial Role, 65 Fordham L. Rev. 71, 127 (1996).

As the Second Circuit noted, in a case factually similar to Corn Derivatives:

> Automatic application of the traditional principles governing disqualification of attorneys on grounds of conflict of interest would seemingly dictate that whenever a rift arises in the class, with one branch favoring a settlement or a course of action that another branch resists, the attorney who has represented the class should withdraw entirely and take no position. Were he to take a position, either favoring or opposing the proposed course of action, he would be opposing the interests of some of his former clients in the very matter in which he has represented them.

> . . . . [W]hen an action has continued over the course of many years, the prospect of having those most familiar with its course and status be automatically disqualified whenever class members have conflicting interests would substantially diminish the efficacy of class actions as a method of dispute resolution.

In re "Agent Orange" Prod. Liab. Litig. , 800 F.2d 14, 18-19 (2d Cir. 1986) (citations omitted). The court then concluded "that the traditional rules that have been developed in the course of attorneys' representation of the interests of clients

16

outside of the class action context should not be mechanically applied to the problems that arise in the settlement of class action litigation." Id. at 19. Rather, it held, a balancing approach like that advocated by Judge Adams in Corn Derivatives was more appropriate in the class action context.

The Agent Orange court listed a number of relevant factors in this balancing inquiry, including some from Judge Adams's opinion: the information in the attorney's possession, the availability of the information elsewhere, the importance of this information to the disputed issues, actual prejudice that could flow from the attorney's possession of the information, the costs to class members of obtaining new counsel and the ease with which they might do so, the complexity of the litigation, and the time needed for new counsel to familiarize himself with the case. See Agent Orange, 800 F.2d at 19.

We are persuaded by the well-reasoned opinions in Agent Orange and Corn Derivatives. We therefore hold that, in the class action context, once some class representatives object to a settlement negotiated on their behalf, class counsel may continue to represent the remaining class representatives and the class, as long as the interest of the class in continued representation by experienced counsel is not outweighed by the actual prejudice to the objectors of being opposed by their former counsel. In making this determination, the district court may consider the factors discussed in Agent Orange and in both the majority and concurring opinions in Corn Derivatives.

Turning to the present case, we note that the situation here differs from that in Corn Derivatives in that counsel there sought to represent only one party, an objector, and not the remaining class members. In a case such as the present one, the balance weighs heavily in favor of denying a motion for disqualification of class counsel that is made on the basis of nothing more than the fact that the objectors include former clients (in the same case) of class counsel, without any showing of impropriety or prejudice. See also Bash v. Firstmark Standard Life Ins. Co. , 861 F.2d 159, 161 (7th Cir. 1988) ("Recognizing that strict application of rules on attorney conduct that were designed

17

with simpler litigation in mind might make the class-action device unworkable in many cases, the courts insist that a serious conflict be shown before they will take remedial or disciplinary action."); cf. Saylor v. Lindsley, 456 F.2d 896, 900 (2d Cir. 1972) (noting that plaintiff's counsel in a derivative action "remains bound . . ., if the client has objected [to a settlement], to inform the court of this when presenting the settlement, so that it may devise procedures whereby the plaintiff, with a new attorney, may himself conduct further inquiry if so advised").

Objectors contend that Class Counsel in this case did not adequately represent all of the class members because they failed to consider the unique interests and damages of the producer plaintiffs.13 Given our agreement with the District Court that the objectors' distinction between producer and investor plaintiffs is not supported by the record in this case, we find no clear error in the District Court's finding that Class Counsel adequately represented the interests of all class members, even if some class members and some of the class representatives are unsatisfied with the results of Class Counsel's efforts. See Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 964 (3d Cir. 1983) ("Class counsel's duty to the class as a whole frequently diverges from the opinion of either the named plaintiff or other objectors.").14

_____

13. We also note that the objectors' brief discusses not the ethical problems involved in the events that transpired, but the alleged shortcomings of Class Counsel while they represented the objectors. See Appellants' Br. at 38-41. Their claims sound less like an ethical breach requiring disqualification than like a hint of possible malpractice. See also id. at 42-45 (blaming Class Counsel for objectors' failure to raise their damages theory until late in the litigation and labeling this "an actionable breach of the professional standard of care under extant Pennsylvania law").

14. See also Laskey v. International Union, UAW, 638 F.2d 954, 957 (6th Cir. 1981) ("That the class counsel proposed a settlement which the named representatives opposed does not prove that the interests of the class were not protected."); Kincade v. General Tire & Rubber Co., 635 F.2d 501, 508 (5th Cir. Jan. 1981) ("Because the`client' in a class action consists of numerous unnamed class members as well as the class representatives, and because `[t]he class itself often speaks in several voices . . ., it may be impossible for the class attorney to do more than

18

Applying the standard we have outlined above, we are satisfied that the District Court weighed the competing interests appropriately and did not abuse its discretion in denying the motion for disqualification of Class Counsel.

VI. Conclusion

For the foregoing reasons, the District Court's order approving of the settlement in this class action and denying objectors' motions for subclass certification and disqualification of Class Counsel will be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

act in what he believes to be the best interests of the class as a whole . . . .' " (citation omitted) (alteration and omissions in original)); Maywalt
v. Parker & Parsley Petroleum Co., 155 F.R.D. 494, 497 (S.D.N.Y. 1994) ("In the absence of concretely alleged acts of impropriety by the duly certified Class Counsel, or a showing abridgment of a significant minority of the Class' rights, this Court will not grant the hasty application of the Moving Representative Plaintiffs to replace Class Counsel on the eve of the Settlement Hearing."), aff'd, 67 F.3d 1072, 1079 (2d Cir. 1995).

19